JOHN F. TROW *v.* THE GLEN COVE STARCH COMPANY.

A material alteration of a written contract by one of the parties to it, without the knowledge or consent of the other, not only discharges the latter from all liability upon it, but if fraudulently made, will release him also from all liability upon the consideration for which it was made.

Where the alteration was made under a mistaken sense of right, or by a stranger, without the knowledge of the party interested, the latter will not be precluded from recovering upon the original consideration. But in such a case, it is incumbent upon the interested party to absolve himself from all suspicion of any privity or knowledge of the fraudulent act.

The plaintiff's agent procured a written contract or order from the defendants for the insertion of the defendants' advertisement in the plaintiff's Commercial Register, at a certain fixed sum named therein. The plaintiff having refused to accept the order at the sum named therein, the agent fraudulently and without the knowledge of the defendants, altered the sum named to a larger sum, and, as thus altered, the plaintiff accepted the order and inserted the advertisement. In an action for work, labor, etc., to recover the price first named in the contract,—*Held*, that it must appear affirmatively on the trial, that such fraudulent alteration was not made with the knowledge or consent of the plaintiff, and, having failed to establish that fact, the complaint was properly dismissed.

Appeal by the plaintiff from a judgment of the First District Court, dismissing the complaint.

The action was brought by the proprietor of the New York City Directory, to recover the price of the insertion of two business advertisements in the Commercial Register annexed to his Directory, one for thirty-five dollars, and the other for two dollars and a half. The complaint was in form for work and labor done by special agreement for thirty-seven dollars and a half, alleging non-payment, and claiming judgment for that amount. The grounds of the defence, and upon which the justice dismissed the complaint, are fully stated in the opinion of the Court.

*R. P. Lee* for appellant.
——— ——— for respondent.

By THE COURT.—DALY, F. J.—The order signed by Duryea was the written contract by which the defendants became

bound to pay thirty-five dollars for the insertion of their advertisement in the Directory, and any material alteration of the instrument afterwards, without their consent, discharged the defendants from all liability upon the written contract; and if the alteration was fraudulently made at the instance or with the knowledge of the party to be benefited by the contract, it released the defendant also from all liability upon the consideration which may have been given in pursuance of it. (*Newell* v. *Mayberry*, 3 Leigh, 250; *Mills* v. *Starr*, 2 Bailey, 359; *Alderson* v. *Langdale*, 3 Barn. and Ad., 660; *Clute* v. *Small*, 17 Wend., 242; *Chitty on Contracts*, 783, 786.) "No man," said Lord Kenyon, referring to this general principle in *Master* v. *Miller* (4 Term R., 329), "shall be permitted to take the chance of committing a fraud without running any risk of losing by the event when it is detected." If the alteration, however, is made under a mistaken sense of right, or by a stranger, without the knowledge of the party interested, the latter will not, in such a case, be precluded from recovering on the original consideration. (*Atkinson* v. *Handon*, 2 Ad. and Ellis, 628; *Sutton* v. *Toomer*, 7 Barn. and Cres., 416; *Jackson* v. *Malin*, 15 Johns., 297; 1 Wend., 658.)

Bigelow, an agent employed by the plaintiff to solicit advertisements for the Commercial Register accompanying Trow's New York City Directory, called at the office of the defendant to obtain their advertisement. He saw Mr. Duryea, the secretary of the defendant; and there is a direct conflict between him and Duryea as to what took place at that interview, as well as to what occurred with the knowledge of Duryea afterwards. We must assume from the judgment the Justice rendered, that he discredited Bigelow in every particular in which he was contradicted by Duryea, and must regard the statement of Duryea as containing the correct version of what occurred. Duryea, on a second interview, agreed to give thirty-five dollars for the insertion of the advertisement, to which proposition Bigelow assented, and presented a printed order on H. Wilson, the compiler of the Directory, requesting the insertion of the advertisement, and agreeing to pay thirty-five dollars for it, which Duryea signed, as agent of the company; Bigelow, however, remarking that he could not insert it for thirty-five dollars without speaking to Wilson; that he would

speak to him and come back. Bigelow says that he saw Wilson, and that he refused to take the advertisement at that price; that he then called upon Duryea, and told him that Wilson would not insert it for less than forty dollars, and that he made the alteration from thirty-five to forty dollars with Duryea's consent. This Duryea absolutely denied, and testified that he did not see the order again, or know anything about the alteration of it, until after the publication of the Directory, when a bill was presented to him for forty dollars.

As the defendants intended to have their advertisement inserted and to pay thirty-five dollars for it, and as they have had the benefit of that service, they should not be absolved from paying what they agreed to pay, unless the plaintiff is chargeable with the fraudulent alteration made by his agent. Independent of the discredit thrown upon the whole testimony of Bigelow by the finding of the Justice, the alteration itself bears intrinsic marks of having been made fraudulently. In the printed order the words " two dollars and fifty cents " were obliterated by a line drawn across them, and the words " thirty-five dollars " were written in the margin below. Afterwards, the words " thirty-five dollars " were carefully erased, and the words " forty dollars " were written over the blank left by the erasure; the whole being done so ingeniously and skilfully, without any blot or change from the general character of the writing in the margin, that the fact that the alteration had been made would not be apparent upon a general observation or reading of the instrument, but would be manifest only upon the attention being fixed upon the part where the change had been made and the figures thirty-five dollars in the margin were transformed into forty with like ingenuity and care. This instrument was in the plaintiff's possession, and was indorsed by him, and if he was innocent of any knowledge that an alteration had been made, or if advised by the agent that made it that it had been done with the consent of the agent of the defendants, I think he should have appeared in the cause as a witness, and have established the fact by his testimony. It was an alteration ostensibly for his benefit, and it was incumbent upon him, under the circumstances, to absolve himself from all suspicion of any privity with or knowledge of the fraudulent act. If it had appeared that it was the dishonest act of the agent

alone, done with a view of securing a commission upon the advertisement obtained, or from any other motive, without any participation in it or knowledge of it on the part of the principal, then, although the plaintiff could not sue upon the altered instrument as a valid contract in writing, he would not, in my judgment, have been precluded from maintaining an action to recover for the service rendered at the price which the defendant had agreed to pay; but as nothing of this kind was shown, I think the Justice did right in dismissing his complaint.

The plaintiff did not rest upon the assumption in the answer that a card or advertisement of the defendant had been published in the Directory during the year 1860, and very properly, as the complaint merely averred in general terms that the plaintiff had published the business advertisement of the defendant in the Directory of that year, without specifying or distinguishing any one in particular, and it was doubtful therefore to which of the two advertisements the admission applied. The plaintiff accordingly gave evidence to show that the advertisement for which two dollars and a half was claimed had been published at the defendants' request; the defendant's agent swore that the bill had been presented and paid, and as the plaintiff gave no evidence to the contrary, the Justice found as he was entitled to do upon the evidence, that this amount had been paid. The judgment should be affirmed.

Judgment affirmed.