[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 414 
At the time of the giving of the note for $1,000, there was no subsisting indebtedness from the plaintiff to the defendant for that sum. The contract of March *Page 416 
13, 1866, so far as related to that $1,000, still remained executory, and the right of the plaintiff to that sum was contingent upon the renewal of the lease. The contract did not call for the giving of the note, but the note and receipt were a modification of the contract made while it continued executory. By the original contract the defendant covenanted to pay the $1,000 to the plaintiff on the 1st of May, 1867, if the lease should then have been renewed. By the note this obligation was made negotiable, which it was not under the agreement, and the time of payment was extended to May 4th, 1867, the note being entitled to days of grace. The plaintiff, under the contract, might have brought his action on the 2d of May, 1867; but after the giving of the note he was not entitled to bring it until after the maturity of the note, May 4, 1867. The three papers in effect constituted the agreement between the parties, and it was necessary to produce them all at the trial.
Assuming the facts to be as offered to be proved by the defendant, the plaintiff, after the delivery of the note to him, attempted further to modify the agreement so as to make the $1,000 draw interest. This he did by adding at the end of the note the words "with interest," without the authority of the defendant; and the defendant further offered to prove that this was done with intent to defraud him. We think that the court below should have admitted this evidence.
Where a contract is evidenced by several writings, all of which are material to show the actual agreement of the parties, the fraudulent alteration of any of them by one of the parties invalidates all. In the present case, the addition of the words "with interest," to the note, was just as plainly an alteration of the terms of the original contract as if inserted therein. Nothing ever became due, or could become due, upon the original contract, except in conformity with the terms of the note. The note, and the receipt expressing the condition upon which it was given and to become payable, entered into and formed part of the original contract, as effectually as if the latter had expressed in terms that the $1,000 were to *Page 417 
be paid according to the tenor of the note. The note was an essential part of the contract and of the plaintiff's proof, and on that ground, if on no other, its fraudulent alteration should preclude any recovery upon the contract.
Where a note or bill is given for a valuable consideration, existing independently of the instrument, it is well settled that the alteration of the note or bill in a material point by the holder, without authority of the maker, prevents a recovery upon the note or bill, whether the alteration be made with or without fraudulent intent. Cases are cited by the respondent, holding that where, by reason of an alteration of the instrument, a recovery cannot be had thereon, the party receiving it may still recover upon the original consideration. But in none of these cases did it appear that the alteration had been fraudulently made by the party thus seeking to recover. The counsel for the respondent cites from the opinion of BULLER, J., in Master v.Miller (4 T.R., 332), that defendant cannot be suffered to pocket the money for which the bill was drawn; "that he must not get £ 900 by the fraud of another;" but it will be found that the opinion in which these remarks occur is a dissenting opinion; that the right to recover on the original consideration was not legitimately in question, and that the plaintiff in the case was unaffected by any fraud. He was a bona fide transferree for value of the bill, and the special verdict found that the alteration was made by some person to the jury unknown.Atkinson v. Hawdon (2 Adol. Ellis, 628) is also cited; but there the question arose upon demurrer, and there was nothing to show that the alteration was fraudulently made. There was no allegation of fraud. Speaking of this case in Clute v. Small
(17 Wend., 238), COWEN, J., says, at p. 242: "In Atkinson v.Hawdon the question arose upon pleading, and, for aught that appeared, the alteration was made under an honest mistake of right. Perhaps that distinction should be adopted." In Sutton
v. Toomer (7 B. Cress., 416), another of the cases relied upon by the respondent, a banker's note was altered by the *Page 418 
maker himself in the presence of the payee, and the only point decided was that this alteration made a new note of it, which required a new stamp, and that, not being stamped when altered, it was void and the customer could recover on the original consideration. This decision was based wholly on the stamp act. There was no wrongful alteration of the note; not a single case is cited, nor have I found any, holding that after a fraudulent alteration of the security the holder can remit himself to the original consideration.
Neither do I find any controlling authority the other way; but such cases as are to be found in the books are to the effect that a party who fraudulently alters or destroys the written evidence of his claim cannot recover on the original consideration.Kennedy v. Crandell (3 Lansing, 1) holds expressly that where notes are given for the purchase-money of property sold, and are fraudulently altered by the payee by adding the words "with interest," he cannot recover either upon the notes or the consideration. In that case the action was brought by a transferree of the notes, after maturity, to whom all claims of the payee under the contract of sale were also assigned, and the complaint set forth the contract of sale as well as the notes. The plaintiff was not permitted to recover upon either. In Trow
v. The Glen Cove Starch Company (1 Daly, 280), a written order for advertising had been altered by raising the price to be paid. The plaintiff was not permitted to recover for the work. InBlade v. Noland (12 Wend., 173) the plaintiff sued for work and labor, and on a note which had been given therefor, alleging the note to have been lost, but it appeared that he had intentionally destroyed it, under circumstances from which a fraudulent intent might be inferred. He was not permitted to recover. In Hunt v. Gray (35 N.J. [Law], 227-234), and inLewis v. Schenck et al. (3 C.E. Green, 461), though the point was not involved, it is assumed that a fraudulent alteration would preclude a recovery upon the consideration.
On principle, regarding the question as an open one, I *Page 419 
think no recovery should be permitted in a case where the holder of a written security or evidence of debt has, with intent to defraud his debtor, altered the instrument in a material part to his own advantage. "To prevent fraud was the obvious policy of the rule which avoids a written contract on account of a fraudulent alteration in a material part. It is apparent that if the party guilty of the fraud may found a claim upon the original consideration, the rule itself would be defeated." (Mills v.Starr, 2 Bailey [S.C.], 359.) To allow parties to take the chances of success in fraudulently raising the amount of the written obligations of their debtors, without risk of loss in case of detection, would be an encouragement to this description of fraud which the law should not afford.
It is said, on the other hand, that the debtor has sustained no injury by the fraud, and that he should not be permitted to profit by the unsuccessful attempt of his creditor to defraud him. It is true that, where the fraud is detected in season, the debtor sustains no pecuniary loss; but he has been intentionally exposed to injury. The alteration may have been so skillfully made as to render detection difficult, or the debtor might have become infirm or died, and the altered instrument successfully imposed upon his representatives. It is for the purpose of discouraging such attempts that the law denies relief to a plaintiff who comes into court with his hands soiled with a fraud so inexcusable. That the effect of such denial will be to benefit the other party is not a sufficient ground for overlooking the fraud. It is a consequence for which the plaintiff is alone responsible, and which always ensues when the action is founded upon a special contract which has been fraudulently altered. It is conceded that in such a case the plaintiff has deprived himself of all remedy, either upon the contract or the consideration. So, in the case of an altered deed, the grantee loses the land and the grantor is benefited. If the argument now referred to was sound, the plaintiff should be permitted in those cases to recall the alteration and avail himself *Page 420 
of the contract or deed in its original and true form, which it is well settled he cannot do.
The cases of usurious securities taken for valid pre-existing debts, or usurious contracts for extension of time, are not analogous. There no fraud is attempted by one party upon the other. The invalidity of the securities results from statutory law, and the consequences of the violation of that law are prescribed by the law itself. These have been held to extend no farther than to invalidate the security or the contract for the extension of time, leaving the pre-existing debt unaffected. In the case of fraudulently altered instruments there is no question of statutory law, but it devolves upon the courts to declare what shall be the consequences of a fraud, deliberately and intentionally committed by one party to a contract upon the other, and of a description which affects the sanctity of written instruments, upon which the courts are accustomed to rely for the purpose of administering justice. A party who thus attempts to falsify evidence which ought to be most reliable, is entitled to very little consideration at the hands of the tribunals whom he has so wickedly prepared himself to deceive. The cases of usurious agreements for extension of time, or usurious securities for antecedent valid debts, are analogous to the case where a note became void, under the stamp act, by reason of an alteration of its contents, made by mutual consent of the parties to the instrument. That was the case of Sutton v. Toomer (7 B. C., 416). It was in that case that such usurious arrangements were referred to, and properly, as being analogous. But they have no analogy to the case of an unauthorized alteration of a written instrument, made by one of the parties thereto for the purpose of defrauding the other.
If the plaintiff has any explanation to give of the alteration in the present case, consistent with his innocence, he will have an opportunity to present it on another trial. But this judgment should be reversed and a new trial ordered, with costs to abide the event.
All concur. Judgment reversed. *Page 421