Folger, J.
This action is brought to recover the value of a promissory note. The plaintiff alleged, that it had been wrongfully converted by the defendants’ testator to his own use. The action before the Code of Procedure, would have been in trover. It is now to be governed by the same rules, which would have governed that form of action.
The verdict of the jury in favor of the plaintiff establishes the fact, that he and his deceased partner were the rightful owners of the note. It also establishes the fact, that the testator wrongfully converted it to his own use. The possession of the note, upon the trial, by the defendants, is presumptive that it has never been paid by the makers.
The contention brought here is, that certain testimony offered by the defendants, was improperly rejected.
The defendants offered to prove that the note was altered by the plaintiffs, the payees therein named, after it was made and delivered to them, without the consent or authority or ratification of the makers; that the note was originally drawn *27 payable to the plaintiffs or order, and as thus drawn was signed by the makers; that it was altered by erasing the words “ to the order of,” and inserting the words “ or bearer.” This testimony was excluded. We think that this was error. It was competent upon the question of the value of the note, and thus upon the question of the damages.
In an action of this kind, the amount appearing to be unpaid upon the note, of principal and interest at the time of the conversion, and the interest upon that aggregate from thence to the trial, is prima facie the measure of damages. (Mercer v. Jones, 3 Camp., 477; Evans v. Kymer, 1 Barn. & Adol., 528; Decker v. Matthews, 12 N. Y., 313; St. John v. O'Gonnel, 7 Porter [Ala.], 466.) The defendant has the right to show in reduction, the fact of payment in whole or in part, the inability of the makers to pay wholly or partially, a release of the makers from their undertaking, the invalidity of the note, or other matter which will legitimately affect and diminish its value. The learned counsel for the plaintiff denies that this is so, save in cases strictly limited and qualified. He asserts that there is no judicial opinion to that effect, where the determination of the point was necessary for the disposition of the case. Grant this. Yet the dicta of learned judges are numerous, uniform, and from earlier to later times. They assert the rule without narrowing qualification. There is no dissent. There is plausibility in the abstract, in the proposition of the learned counsel; that though the maker of a note may be at the time of the conversion pecuniarily worthless; he may, nevertheless, in the frequent and extreme mutations in the' affairs of men in this land, not long thereafter be of ample means. We may not forget, however, what is the rule of damages in an action of trover. In general, it is the value of the thing converted, with the interest thereon. (Kennedy v. Strong, 14 J. R., 128.) Chattels are variable in value, as well as the obligations of men. And so Kent, J., says, in Cortleyou v. Lansing (2 Caines Cas., 199, 215), where there is an uncertainty or fluctuation attending the value, and the chattel afterward *28 rises in value, the plaintiff can only be indemnified, by giving him the price of it at the time he calls upon the defendant to restore. In that case, which was one of a “ depreciation note,” said to be of the value of $2,629.48, left with the defendant as collateral for an advance of a less sum; the rule of damages was said by that judge, to be the real value of the note at the time of the demand.* The plaintiff has chosen to seek his remedy in such wise that, by the rules governing his action, a recovery will give to him no more than the value of the note converted, and will give to the defendant the title to the thing itself. To arrive at the amount of his damages there must be proof of value.. It is not in accord with common observation, that always the value of a note- is the amount at which it proclaims itself. Yet it is often so; perhaps more often than otherwise. So, as the rule of damages should be fixed and uniform, the law says, let the amount for which the note reads be taken as its prima facie value; but let the defendant be at liberty to show that which has affected it and reduced its value. . This applies the just rule of damages which has long been in use in this action ; the value of the article, at the time of the act which gave to the plaintiff, the right of action in the mode which he adopts. There is an action (replevin) in which he might have sought the note itself and not its value. It is true that there are contingencies in that action, which would force upon him the same issue, of the value of the note. But seeking by his action to obtain, not *29 the note itself, but the value of it, and to put the property in it in the defendants, he must be satisfied with the general rule governing his form of action, and take its value at the time ; to be shown by proof of all that affects its value. If there be no adjudication directly upon the point, now sharply ”aised in this case, that which we state’ as the rule, has long been received by bench and by bar as the true and settled one. It is in harmony with the analogies of the law and with the reason of the case. (See Allen v. Suydam, 20 Wend., 321-335, where several cases are cited.)
Then, does the alteration of which proof was offered make this note void? Every material alteration of a note, made by the holder after its execution, without the authority of the maker, and certainly if with fraudulent intent, avoids it. Every alteration is held to be material, which will change the legal liability of the maker, or which may work to his prejudice. (2 East Cr. Law, 855.) The alteration made in this note would not change the legal liability of the maker, by making it any more negotiable, nor increasing the amount of it, nor accelerating nor retarding the time of the payment of it, nor changing the place of its payment. These are commonly the effects of the alterations generally brought to notice. If the bearer of the note should be its lawful owner, it is as easy for the maker to pay it to him as to the payees, or an indorsee of the payees. But it is then the risk of the maker, whether the bearer is the real owner. The makers signed and delivered a note payable to the plaintiffs or order. The note altered so as to be payable to them or bearer, comes to the makers for payment. It has not the indorsement of the payees upon it, directing its payment, either in particular to a person named, or in general to any person; it has not that proof of having been transferred by them. It may have left the possession and ownership of the payees, in the due course of business^ It may not have done so, but have been gotten from them surreptitiously, and under such circumstances as not to pass their title to it, and have then been altered so as to read “ to bearer.” In the latter case, the *30 makers, if they pay it, are to assume the burden of contesting at some time afterward, if called upon by the payees for payment, whether or not the alteration was made by the payees while the note was in their possession, and duly passed away. If not able to maintain that it was, they are liable again for its amount. So that an alteration from “ or order,” to “ or bearer,” does become material, in that it may prejudice the makers, by putting them to this risk. Akin to this was the alteration in Rex v. Birket (Russell & Ryan, 251), of a special indorsement upon a bill, to a general one. That was held to be a fraudulent alteration, and that an indictment for forgery would lie. Of less moment, but of some moment, is the consideration that a note to the payee or order, does not leave his hands save with his indorsement. It then becomes, in the hands of the maker, after payment, a voucher, and evidence of discharge of the indebtedness which is the consideration for it.
It is suggested that the offer of proof made by the defendants does not cover the case which they sought to make, in that there is no offer to show that the alteration was made with fraudulent intention. It does not need, in such case, to make express proof of that intent. If a note be altered in a material part, without authority, after execution, that avoids the note. It is not of moment whether it be done with fraudulent intent, save as the existence of such intention affects the right to resort to the'original indebtedness; and then the fact of the unauthorized material alteration, is a matter for the consideration of the jury, in determining the question of fraudulent intention. We are of the opinion that the alteration named in the offer was a material one; that the act being proved, it showed that the note was void; and if the jury had found therefrom, and from any other circumstances shown to them, that it was done with fraudulent intent, the note would have been unavailable in a resort to the original indebtedness. Hence the note would have been valueless.
The plaintiff was not, however, precluded from further progress; he had the right after the offered proof had been *31 received in evidence, to rebut the inference of fraudulent intention, or to show a justification or excuse for the act. Sometimes an alteration in a note, seemingly material, and such as may prima facie render it void, is innocent and does not vitiate the instrument. So it is, when it is done to correct a mistake in penning the note, or to make it express the real bargain of the parties, or to give the proper legal form to their contract. In such case the payee has a right to enforce it. Again, if the alteration was made without fraudulent intention, the payee may resort to the original indebtedness, if that was independent of the note and has not been discharged by the execution of it, and pursue the maker upon that. (Clute v. Small, 17 Wend., 238; Meyer v. Huneke,* decided in this court 20th January, 1874.) But to have such resort he must be able to produce and surrender the note. Hence its real value is not destroyed by the alteration. Its worth is as much, as the original independent indebtedness was worth at the time of the conversion. The damages of the plaintiff are that amount, if nothing else has intervened. Of course, the same rule as to interest applies. We see no reason, either, why the plaintiffs may not show a readiness on the part of the makers to waive, dr in other words to ratify, the alteration, and to admit the note to be a valid obligation against them. We do not think, however, that there is in the facts of this case, that which will ground a presumption, that they are willing or likely so to do.
The defendants also offered to prove that their testator took the necessary and proper steps to present the note for payment, but that it was not paid, and that the makers resided at the place in which the bank was situated at which the note was made payable. This proof was excluded. We think that this was error. Proof of the inability of the maker to pay his note affects its value. Evidence tending to show inability is given, when it is testified that there is neglect or refusal, to pay it according to its terms. We think that Brown v. Mont *32 gomery (20 N. Y., 287) necessarily establishes this. The facts in that case are stronger than those in this. The principle is the same in both. The charge to the jury there excepted to was, that non-payment and protest was evidence tending to show insolvency. This court held that charge correct, saying: When a business man in a commercial town fails to meet his paper, payable at a bank, and especially his checks upon the bank at which he keeps his account, the natural inference which one draws is, that he is no longer able to pay his debts. The issue in that case was, whether the concealment of the fact of the non-payment and protest therefor of a check, was not a fraudulent suppression of knowledge of the insolvency of the drawer. It was held that it was. If of a drawer of a check on the bank at which he kept his account; then of a resident in a business community, maker' of commercial paper payable at a bank therein. Doubtless, the fact of non-payment is not of the same weight in every case. We have seen that, in the case last cited, the non-payment of a check upon the bank at which the drawer kept his account, was reckoned of especial significance. Non-payment of a note discounted for the accommodation of the maker, a man in business in a commercial community, by a bank so related to him, would not be much less. Nonpayment of a note made by such a person, at unusual time and on unusual terms, for a consideration not strictly in the line of his ordinary business, payable at a bank designated merely for the convenience of the parties, would be less. And of a note made by one, of an occupation, the habits and usages of which did not train him or those about him to a jealous care for credit, would not be of much if of any weight. The value of the evidence depends upon the facts of each case. But so long as every man in commercial pursuits, in a community likewise engaged, knows the value of a good credit, does not suffer it to be lightly lost, and is painfully aware that a lapse in punctual performance of his business obligations does tend to the loss of it, the inference will be natural, from his failure to pay according to his *33 engagement, that he is unable to pay. Such testimony may be met, of course, by evidence of reasons existing which justified a refusal to pay, or excused neglect so to do; or by evidence of real pecuniary ability.
The testimony offered was admissible under the pleadings. There is a general denial, in the answer, of all the allegations of the complaint not specifically admitted. This denial applies to the allegations of the liability of the testator, and of the amount of the damages sustained 'by the plaintiff. (Quin v. Lloyd, 41 N. Y., 349.)
A majority of the court differ from me, and are of the opinion that the evidence offered, that another note, made at the same time, by the same parties, of the same tenor and date of the one converted, for the same consideration, payable at a different time of payment, was owned by the plaintiff and his deceased partner, and was by them altered in the same particular, after it came into their hands, without the authority, consent or ratification of the makers, and was transferred by the payees, was properly excluded. Though it is permissible, on an issue of forgery of a note, for the purpose of showing fraudulent intention, to give evidence of the possession and uttering of other like forged notes (Rex v. Wylie, 4 Bos. & Pull., 92; Rankin v. Blackwell, 2 Johns. Cases, 198), the majority of the court think that that rule is not applicable to this case.
A majority of the court are of the same opinion as to the offer to prove that the other note was sued by the transferrees of it against the makers, was defended by them on the ground of the alteration, that judgment was rendered in their favor in the action, and that Booth & Flint had notice of the suit and furnished afBdavits to be used on a motion for a new trial. Judicial records are sometimes admitted, in favor of strangers to them, against parties to them. It is on the ground that they are, or contain, solemn admissions or declarations of the party sought to be affected in the action on trial. This rule, it is now held, does not apply in this case, and that the general rule applicable here is, that a record in another *34 action cannot be admitted save for and against parties or privies to it; it being then received on the principle of estoppely to which it is essential that it should be mutual.
The testimony from the testator, on his cross-examination, as to his knowledge or information as to the responsibility of the makers of the note, was properly received. It was quite pertinent upon the issue, of whether the note was sold to him absolutely, or was lodged with him as collateral security for a loan of $500.
The judgment-roll in the action of Craig (the testator) against Flint (the deceased partner), was properly excluded from evidence; it was res inter alos acta, as to Booth, the survivor.
For the reasons given, the judgment should be reversed, and a new trial granted, with costs to abide the event.
All concur except Church, Oh. J., dissenting, and Allen, J., not voting.
Judgment reversed.

 Although Oortleyou v. Lansing, appears as a decided case, and is regularly reported as such, it in fact, was never decided by the court. (See remark of Kent, O. J., in Barrow v. Paxton, 5 J. B., 258-260.) But the opinion reported, was prepared by Kent, and has the authority of his name. The case has often been cited, and has been relied upon as authority, or at least as a correct exposition of the law. It is referred to by Kent himself, when chancellor; see Hart v. Ten Byck (2 J. O. B., 62-101); and twice cited by the Supreme Court, when he was a member of it. (8 J. B., 97,10 id., 474. See, also, West v. Wentworth (3 Cow., 82); CUwVc v. Finney (7 id., 681-683, 694); McFarland v. Wheeler (26 Wend., 467-475). It has also been eited in numerous other cases, to which it would be tedious to refer in extemo. — [F.

 55 N. Y., 412.