### COLUMBIA DISTILLING CO. v. RECH et al.

(Supreme Court, Appellate Division, Fourth Department. May 1, 1912.)

1. ALTERATION OF INSTRUMENTS (§ 5*)—NEGOTIABLE INSTRUMENTS—"MATERIAL ALTERATION."

The addition to a note by the payee without the knowledge of the maker of the words "with interest 6 per cent." is a material alteration of the note within Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 206, subd. 2, declaring that any alteration changing the sum payable either for interest or principal is material.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 18–29; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 5, pp. 4405–4406; vol. 8, p. 7717.]

2. ALTERATION OF INSTRUMENTS (§ 20*)—MATERIAL ALTERATIONS—FRAUDULENT INTENT—EFFECT.

Where a material alteration of a note was made fraudulently by the payee, the note was vitiated, and the original indebtedness evidenced by it was extinguished.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 158–189; Dec. Dig. § 20.*]

3. ALTERATION OF INSTRUMENTS (§ 29*)—MATERIAL ALTERATIONS OF NOTES—FRAUDULENT PURPOSE—EVIDENCE.

Evidence *held* to justify a finding that a material alteration of a note by the payee was fraudulently made, so as to vitiate the note, and extinguish the original indebtedness evidenced by it.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 259–263; Dec. Dig. § 29.*]

Appeal from Trial Term, Monroe County.

Action by the Columbia Distilling Company against Charles W. Rech and another. From a judgment for defendants on a verdict of no cause of action and from an order denying a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, and ROBSON, JJ.

Isaac Adler, of Rochester, for appellant.

W. B. Simson, of Tonawanda, for respondent Charles W. Rech.

Corden T. Hackett, of Tonawanda, for respondent Frederick A. Rech.

SPRING, J. The plaintiff is a domestic corporation, and the defendants copartners in business. On the 14th of September, 1910, the plaintiff sold and delivered to the defendants a quantity of liquors, for which they agreed to pay $330.51. The agent of the plaintiff who made the sale testified that the merchandise was sold on four months' time;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

while the testimony of Charles W. Rech was that the agent "told me that I could take my own time. Four months is sometimes a reasonable time and sometimes it is not. I would consider four months a very fair time. I have had longer time." On the 21st of November, 1910, at the request of the plaintiff, the defendants gave their promissory note to the plaintiff for the amount of the account, due in three months from its date. The note was not drawn with interest. When received by the plaintiff, it caused the words, "With interest at 6 per cent." to be written in the note above the signature of the defendants, and without their knowledge. About the time the note became due, the defendants paid thereon $105.51, and gave another note dated February 1, 1911, due in three months, for $225, which, with the payment, equaled the face of the claim. At the time of the giving of the second note the defendants did not know of the alteration of the first note, and the last note was not given with interest. Immediately after it was received, the bookkeeper of the plaintiff, with the knowledge of the officers of the plaintiff, altered the note by adding, "with interest 6%." When the note came due one of the defendants went to the bank where it was made payable for the purpose of paying it, and then first learned of the alteration. He first testified that he "wanted to pay the $225, but I wouldn't pay the interest. The bank refused to accept the $225. They said they couldn't accept it." Later he said: "They (the plaintiff) didn't say they would take $225. I didn't offer to pay $225 at the bank. I didn't offer them anything since then."

The complaint set out two causes of action, one on the original indebtedness, and the other on the note; and on the trial the plaintiff offered to surrender the note, and sought to recover the balance alleged to be due on the account. The sole question submitted to the jury was whether the alteration of the note was made "with fraudulent intent to compel the defendants to pay something more than they were morally or legally obligated to pay," and, if so, "then your verdict will be in favor of the defendants," otherwise for the plaintiff.

[1, 2] The addition, "With interest 6%," constituted a material alteration of the note. Negotiable Instruments Law, § 206, subd. 2 (3 Consolidated Laws 1909, p. 2507). If the alteration was made fraudulently, as the jury have found, the taint not only vitiates the note, but also extinguishes the original indebtedness. Meyer v. Huneke, 55 N. Y. 412, 417 et seq.; Kennedy v. Crandall, 3 Lans. 1, 6; Booth v. Powers et al., 56 N. Y. 22, 31; Maguire v. Eichmeier, 109 Iowa, 301, 304;[1] Daniel on Neg. Insts. (5th Ed.) § 1410a; Randolph on Commercial Paper (2d Ed.) § 1763; Tiedeman on Bills & Notes, § 150. While the penalty imposed is severe to the plaintiff, and the defendants have sustained no pecuniary loss, as they are asked simply to pay the balance of the debt, which they originally incurred and which has not been paid, the reason for the drastic rule is found in the necessity for visiting the full measure of punishment to one perpetrating the fraud. Loss to one person or gain to another are not considerations which induced the adoption of the rule adverted to. As was said in Daniel on Negotiable Instruments, § 1410a:

"It is necessary that the law should impose this forfeiture of the debt itself upon one who fraudulently tampers with the instrument which evidences

[1] 80 N. W. 395.

or secures it; and it is done upon the principle that 'no man should be permitted to take the chance of gain by the commission of a fraud, without running the risk of loss in the case of detection.' "

The fraud might have extended to simulating the handwriting of the writer of the note, and the defendants might have been unable to detect the alteration; or, if they had died before the maturity of the note, discovery of the fraud might have been difficult. The plaintiff is responsible for the alteration, and "it is for the purpose of discouraging such attempts that the law denies relief to a plaintiff who comes into court with his hands soiled with a fraud so inexcusable. That the effect of such denial will be to benefit the other party is not a sufficient ground for overlooking the fraud." Meyer v. Huneke, 55 N. Y. 419.

[3] It is claimed that the proof does not justify the inference that the alteration was fraudulently made. No officer of the plaintiff testified in its explanation. The bookkeeper in attempting to excuse it said the account was past due, and he "presumed it was an oversight on the part of the party that drew the note leaving it off. That is what caused me to put it on," and that in making the alteration he had no intention "to defraud anybody," but it was made for the purpose of collecting the interest when the note matured. It is not important that the bookkeeper did not act with any purpose to defraud. He made the alteration with the knowledge of "the firm," as he designated the plaintiff. The alteration was in fact made, was material, and with no effort to justify it by those responsible for it. The jury were warranted in determining that it was fraudulently made.

The judgment should be affirmed.

Judgment and order affirmed, with one bill of costs in favor of the respondents. All concur, FOOTE, J., not sitting.