MEADOW BROOK NATIONAL BANK, Plaintiff, *v.* SEABOARD DIECASTING CORP. et al., Defendants.

Supreme Court, Trial Term, Nassau County, November 21, 1966.

*Lee Franklin* for plaintiff. *Jacob Oliner* for defendants.

WILLIAM R. BRENNAN, JR., J. On June 19, 1963, the defendant Seaboard Diecasting Corp. made its promissory note for $1,040.64 to the order of Toroy Die Casting Corp., due July 22, 1963. The note was executed in behalf of the defendant by Larry Shifman, president of the maker, who also indorsed the note in blank prior to its delivery. Eight days later the note was negotiated by the payee to the plaintiff Meadow Brook National Bank which credited the discounted proceeds to the account of Toroy. Toroy made an assignment for the benefit of creditors on July 16, 1963, and when the plaintiff presented Seaboard's note for payment, it found that payment had been stopped by the maker which claimed an offset against Toroy, the original payee. Other defenses (including the alleged right to the offset) having been dismissed at the close of the trial, the only issues presently requiring determination arise from the second pleaded defense that the note was materially altered by the plaintiff without either the knowledge or consent of the defendants, and from the defendant Shifman's claim that he was not given notice of dishonor.

The note, which is on a standard printed form, consists of portions that are typed and portions that are written. The typed dollar amount which follows a printed dollar sign is " $1,040.64." Next to these typed numerals has been written in ink " + 5.72 = 1046.36." At the foot of the note to the left and above the typewritten signature of the corporate maker (Seaboard) appear the printed words " Value received " followed by " 6% *int* " written in ink. The numerals " + 5.72 = 1046.36 " were written by the note-teller at the plaintiff's receiving office and represented her computation and addition of the interest item to the face amount of the note.

The defendants contend that the words " 6% *int* " were added by the note-teller or some other employee of the bank when the note was offered and negotiated to it. The plaintiff produced only one witness who did not see the note on the date of its negotiation to the plaintiff. The defendant Shifman testified that the legend " 6% *int* " was not upon the note when he executed it in behalf of Seaboard, indorsed it in blank and delivered it to Toroy. There is no evidence in the record that the legend was in fact added by the plaintiff's employee; and the court is unable to determine by its inspection, unaided by expert testi-

mony, that the same hand that wrote " $+5.72 = 1046.36$ " wrote the legend " 6% *int.*" On the other hand, the plaintiff did not produce as witnesses either the note-teller or the officer approving Toroy's discounting of the note nor did either party offer the testimony of the officer or officers of Toroy who had received the note from the defendants or tendered it to the plaintiff.

Upon this state of the record, the issue can only be resolved by determining which of the parties has the ultimate burden of proof, since the plaintiff has not established by a fair preponderance of the evidence that the interest legend was on the note when it received it (as it might have done by producing the testimony of one or both of its employees who handled the transaction and saw the note when it was taken by the plaintiff; or by producing the testimony of the agent of Toroy who negotiated the discounting of the note); and the defendants have not established by a fair preponderance of the evidence that the legend was added by the plaintiff (as they might have done by offering the same witnesses, or one or more of them).

One may not take notice of any custom in this respect since it is not a universal custom for notes to bear interest (*McGrath* v. *Clark*, 56 N. Y. 34). And, if the note when delivered contained no provision for interest, a finding which the court makes, the addition of a clause thereto providing for interest is a material alteration (Negotiable Instruments Law, § 206; *McGrath* v. *Clark, supra*; *Columbia Distilling Co.* v. *Rech*, 151 App. Div. 128; *Dumbrow* v. *Gelb*, 72 Misc. 400). Such an alteration would render the note void in the hands of any holder but a holder in due course (Negotiable Instruments Law, § 205; *Weyerhauser* v. *Dun*, 100 N. Y. 150).

The plaintiff was a holder in due course of the instrument (Negotiable Instruments Law, § 91). And even if the words " 6% *int* " were added to the note by some one other than the maker and first indorser, the mere fact that the addition was made by writing in ink rather than by typewriting would not make plaintiff less a holder in due course. In *Cheever* v. *Pittsburgh, Shenango & Lake Erie R.R. Co.* (150 N. Y. 59, 65–66) the court discussed the duty of one accepting a negotiable instrument and claiming to be a holder in due course in the following terms: " There is not much difficulty in stating the rule of law defining the duties and obligations of a party to whom negotiable paper is presented for discount or sale before due. He is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith.

The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title, according to settled doctrine, will prevail.''

The burden of proving that the interest legend was on the note when it was negotiated to the plaintiff was upon the plaintiff (*National Ulster County Bank* v. *Madden,* 114 N. Y. 280, 286; *New Rochelle Securities Co.* v. *International Thrift Soc.,* 270 N. Y. 52, 54; *Matter of Pinkerton,* 49 Misc. 363; cf. *McGrath* v. *Clark,* 56 N. Y. 34). It has not met that burden. But it does not follow that the alteration was made by the plaintiff. The burden of proving that the alteration was in fact made by the plaintiff was upon defendants. They have not met that burden. At the same time, the defendants have demonstrated that the legend was not on the note when they delivered it to Toroy. Section 205 of the Negotiable Instruments Law, entitled '' Alteration of instrument; effect of '', provides, in part: '' But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor.''

The note is, therefore, enforcible in the hands of the plaintiff according to its original tenor (cf. *Oltarsh* v. *Turf Broadway,* 12 Misc 2d 984, 987) which, in this case, means it is entitled to judgment for $1,040.64, with interest thereon from its due date, July 22, 1963, and the Clerk may enter judgment accordingly.

The court has not overlooked the indorser's defense of lack of notice to him of dishonor. It has no merit. He was the president of Seaboard and the officer who, in its behalf, stopped payment of the note. That is adequate notice of dishonor (*Gordon* v. *Chagrin,* 15 A D 2d 956).