**LITTON INDUSTRIES CREDIT CORPORATION, Plaintiff,**

v.

**PLAZA SUPER OF MALTA, INC., Savas Ermides, Natalie A. Ermides, C. J. Drislane Co., Inc., Star Plaza, Inc. and Capitol Refrigeration Co., Inc., Defendants.**

**No. 76–CV–496.**

United States District Court,
N. D. New York.

Oct. 24, 1980.

---

Ryan & Silberberg, Gerald E. Fogerty, New York City, for plaintiff.

Helm, Shapiro, Ayers, Anito & Aldreich, Douglas H. Ward and Howard Shapiro, Albany, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This diversity action arises out of an agreement for the lease of refrigeration equipment entered into between the plaintiff Litton Industries Credit Corporation (hereinafter "Litton"), as lessor and defendant Plaza Super of Malta, Inc. (hereinafter "Plaza"), as lessee. Payment under the lease was allegedly guaranteed by defendants C. J. Drislane Co., Inc. (hereinafter "Drislane"), Star Plaza, Inc. (hereinafter "Star"), Capitol Refrigeration Co., Inc. (hereinafter "Capitol"), and Savas and Natalie A. Ermides. The case is presently before the Court on defendant Drislane's motion for summary judgment dismissing plaintiff's claim for recovery against it under an alleged guaranty agreement on the ground that no such contract ever existed, and that if an agreement did exist, that it was materially altered by an agent of the plaintiff and is therefore unenforceable. Jurisdiction is predicated upon 28 U.S.C. § 1332.

## BACKGROUND

The facts surrounding the various transactions involved in this matter are largely, although not entirely undisputed. Defendant Plaza needed refrigeration equipment for a retail food market owned by it. An elaborate financing scheme was worked out by the parties to this lawsuit whereby Litton would purchase refrigeration equipment which was owned by Capitol and was already installed on the market premises, and would then lease the equipment to Plaza.

Plaintiff's willingness to enter into the transaction was conditioned upon Plaza's financial obligations under the lease being fully guaranteed by defendants Savas and Natalie Ermides and Star, and partially guaranteed by defendants Drislane and Capitol. Drislane's participation in the financing scheme arose out of its relationship with Plaza as a supplier of retail frozen foods.

On January 27, 1975, Litton and Plaza entered into a formal lease agreement for a term of eighty–four (84) months at a total rental cost of $583,632.00. The Ermides, Star and Capitol executed their respective guaranty agreements on the same date. Drislane executed its guaranty agreement on January 30, 1975. However, the terms in the agreement which plaintiff had submitted had been altered by Drislane in an unacceptable manner, and the agreement was rejected.

Drislane agreed to a revision, and on Friday, January 31, 1975, several copies of the revised agreement were executed by Drislane representative Richard LeClair. Under the terms set forth in the agreement, Drislane agreed to guarantee payment of thirty–seven and one–half percent (37½%) of Litton's net loss under the lease agreement "without deduction by reason of set-off, defense or counterclaim."

Mr. LeClair retained one copy and gave the others to Mr. Donald Bronstein, Presi-

dent of defendant Capitol, who had been delegated responsibility for obtaining necessary signatures and delivering the documents involved in the transaction to plaintiff's office in Stamford, Connecticut. On Monday, February 3, 1975, having had the executed copies of the Drislane agreement in his possession over the weekend, Mr. Bronstein delivered the documents to Litton.

Bronstein waited while plaintiff's representative William Lucas reviewed and approved the Drislane agreement. Upon approval a check was issued to defendant Capitol in payment for the refrigeration equipment, and the lease agreement between Litton and Plaza became operative.

Plaza allegedly defaulted on the lease and Litton declared the entire amount due and owing. The property was sold at a private sale, and plaintiff commenced this action for recovery under the lease and the various guaranty agreements. It was upon the commencement of this action that the factual allegations of primary concern on the summary judgment motion now before the Court came into light. A purported copy of the Drislane guaranty agreement was appended as an exhibit to Litton's complaint. According to Drislane, however, the copy attached to the complaint contained alterations which were not present when Richard LeClair executed the agreement for Drislane and are not contained in the executed copy which was retained by Mr. LeClair at the time he signed the agreement.

The first alteration, which bears the allegedly forged initials of Richard LeClair, deletes the following sentence from the original proposal:

Our obligations shall be based on initial equipment costs to you of $360,000, subject to the reductions herein provided for.

The second alteration, also bearing the allegedly forged initials of Richard LeClair, added to the original proposal in the following manner (addition underlined):

This instrument shall continue in full force and effect for forty–two (42) months from the date of the execution of the lease agreement. When the Custom-

er has made the required 42 lease payments for such 42 month period in accordance with the terms and conditions of the lease agreement, we shall be discharged from the liability contained herein upon receipt of LICC's written consent.

In response to questions asked him at an examination before trial, Mr. Bronstein of Capitol testified that he did not believe that the agreement contained the alterations when executed by Mr. LeClair and denied making the alterations himself. William Lucas also testified at an examination before trial, and stated that the alterations were contained in the agreement when he received it for review and approval. Furthermore, he testified that without the alterations the agreement would have been unacceptable to Litton. Lucas denied making the changes himself and indicated that none of Litton's employees were authorized to make the alterations. Litton's original of the Drislane agreement is inexplicably missing from its file on the transaction.

Defendant Drislane strongly infers that plaintiff's representatives were responsible for the alterations. While it is highly likely that unauthorized alterations were made to the Drislane agreement, it has not been established at this time that anyone connected with Litton was involved nor has it been conclusively determined when the alterations were made.

Drislane, in moving for summary judgment, contends that no guaranty contract ever existed between it and the plaintiff and thus Litton is not entitled to recovery against it. According to Drislane, an enforceable guaranty contract requires a meeting of the minds and since the offer made by Drislane in the agreement as executed by Mr. LeClair differed from the offer (the altered agreement) accepted by the plaintiff through its performance under the agreement, the requisite meeting of the minds was lacking.

In addition, Drislane argues that even if there was an otherwise enforceable guaranty agreement between it and plaintiff, that the agreement is void because it was mate-

rially altered. The defendant appears to admit, however, that if the Court determines at this point that a contract did exist, that a trial will be necessary with regard to the issues raised on its defense of material alteration of the agreement, thus making summary judgment inappropriate.

## DISCUSSION

■ Summary judgment is a drastic remedy which should be granted only when it is clear that the requirements of Rule 56 of the Fed.R.Civ.P. have been satisfied. *United States v. Bosurgi*, 530 F.2d 1105, 1110 (2d Cir. 1976). While it is a useful device for "unmasking frivolous claims and putting a swift end to meritless litigation", *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980), "[s]ummary judgment is to be used not as a substitute for trial, but only when 'it is quite clear what the truth is [and] that no genuine issue remains for trial.' *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944)." *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 184–85 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). The moving party has the burden of demonstrating that no material issue of fact exists and that it is entitled to summary judgment as a matter of law. *Quinn v. Syracuse Model Neighborhood Corp., supra*, 613 F.2d at 444. The Second Circuit in *Quinn* stressed that in determining a summary judgment motion, the Court must "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Id.* at 445.

Summary judgment has been found to be notoriously inappropriate in cases such as this one in which judgment is sought "on the basis of 'the inferences which the parties seek to have drawn [as to] questions of motive, intent, and subjective feelings and reactions.' [*Friedman v. Meyers*, 482 F.2d 435, 439 (2d Cir. 1973)]." *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir. 1979). *Accord, Peoples Outfitting Co. v. Gen. Elec. Cr. Corp.*, 549 F.2d 42 (7th Cir.

1977), *Pfizer, Inc. v. International Rectifier Corp., supra; Dzentis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir. 1974). The Tenth Circuit recently stated in *Romero v. Union Pac. RR.*, 615 F.2d 1303, 1309 (10th Cir. 1980) that "[s]ummary judgment should not be granted where different inferences can be drawn from conflicting affidavits and depositions." The Court went on to explain that "[t]his is particularly so where an issue turns on credibility." *Id.*

■ This lawsuit presents precisely the type of situation in which summary judgment is inappropriate. Drislane does not appear to deny that it intended to enter into a guaranty agreement with the plaintiff, nor does it dispute the fact that by its performance Litton intended to accept the guaranty offer. Rather, Drislane argues that the offer accepted by Litton was not, because of the alterations, the same offer made by it. Drislane asks this Court to summarily release it from any liability under the purported guaranty agreement solely upon the grounds that the agreement was allegedly altered at an as of yet unspecified time by an unidentified individual. The Court is convinced that it would be imprudent to grant such relief on the basis of the incomplete factual picture now before it.

■ Under New York law, formation of an enforceable contract requires "mutual assent to the terms and conditions thereof." *Gupta v. University of Rochester*, 57 A.D.2d 731, 395 N.Y.S.2d 566, 567 (App.Div., 4th Dept. 1977). Whether a binding contract exists is basically a question of the intent of the parties. *C. M. Gridley & Sons, Inc. v. Northeastern Consolidated Co.*, 36 A.D.2d 1001, 321 N.Y.S.2d 171 (App.Div., 3rd Dept. 1971). Instead of looking at the subjective intent of the parties

[i]n determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. (Citations omitted).

*Brown Bros. Elec. Contr. v. Beam Const.*, 41 N.Y.2d 397, 399–400, 393 N.Y.S.2d 350, 351–52, 361 N.E.2d 999 (1977).

In the same case, the New York State Court of Appeals cautioned that in ascertaining objective intent

> disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.

*Id.* at 400, 393 N.Y.S.2d at 352, 361 N.E.2d at 1001.

The Court, on this motion for summary judgment, does not have the facts before it which it believes to be necessary for the proper application of New York State contract law as set forth in *Brown Bros.* Furthermore, in a situation such as the one presented in this lawsuit in which allegations of serious wrongdoing have been made, it is particularly important that the Court have the opportunity to judge the credibility of those involved. That, of course, cannot be done on the basis of affidavits, the selected portions of depositions which have been submitted to the Court, and the accusations made by counsel in memoranda submitted in support of and in opposition to the motion.

Defendant Drislane asserts that the Court in deciding its motion need go no further than the decision in *Jacob Dold Packing Co. v. Lampe*, 199 App. Div. 199, 192 N.Y.S. 102 (App.Div., 3rd Dept. 1921). In that case the New York Court was faced with a factual situation quite similar to the scenario alleged by defendant Drislane in this lawsuit. The Court found that a proposed written guaranty had been materially altered by an agent of the individual accepting the offer, prior to the acceptance. Presented with that factual situation, the Court found that "[n]o agreement upon the proposal before the alteration [had] ever been made between the parties and no contract of guaranty was made." *Id.* at 202, 192 N.Y.S. at 104. In reaching its conclusion the Court stated that guaranty contracts like other contracts required mutual assent of the parties.

Whatever the ultimate application of the *Dold* case to the present lawsuit, it is not determinative on this motion because as previously indicated, this Court does not have the facts before it necessary to reach the conclusions reached by the *Dold* Court. In that case, the lower Court sitting without the jury was able to reach its conclusion based upon stipulated facts. This Court does not have that advantage and will not be able to reach conclusions with regard to the facts until after a trial on the merits at which point events will hopefully be clarified and at least the opportunity will be given to judge the credibility of those involved.

Even if this Court determined at this juncture that a guaranty contract did exist between the parties to this motion, a trial on the merits would be necessary in order to make factual conclusions as to when and by whom the agreement was altered. In New York State, the general rule is that if a party asserting a right under a written contract makes a material alteration in the agreement to his own benefit, with fraudulent intent, he generally cannot recover under the agreement. *Meyer v. Huneke*, 55 N.Y. 412 (1874). However, if the alteration is made by a stranger to the agreement, the alteration is of no effect even if material in nature, and the agreement can be enforced as it stood without the alteration. *Gleason v. Hamilton*, 138 N.Y. 353 (1893).

Thus, for the reasons given above, defendant Drislane's motion for summary judgment dismissing plaintiff's claim against it under the purported guaranty agreement entered into between the parties is hereby denied.

IT IS SO ORDERED.