FREDERICK WEYERHAUSER et al., Respondents, *v.* R. GRAHAM DUN et al., Appellants.

One who signs or indorses a note in blank, to be used as a security, authorizes the person to whom it is delivered to fill the blanks in respects essential to the completeness of the note as such; but, in the absence of express authority or consent, no authority can be implied from the delivery, to insert a special agreement not so essential.

Where, therefore, in a note, which was indorsed for the accommodation of the maker, blanks were left for the date, the time the note was to run, the payee and the principal sum, *held*, that while the maker had authority to fill these blanks, the indorsement conferred no authority to write in the note an agreement that after maturity it should draw a special rate of interest, greater than the regular rate, although the law of the State where the note was made permits special agreements to be made for the rate specified.

Also *held*, where a note so filled in was delivered by the maker in renewal of another note, and received by a collecting agent, authorized by the owner of the old note to renew it, that such authority did not justify the agent in the acceptance of the new and the surrender of the old note.

But *held*, that where the agent acted in perfect good faith, believing he was obeying instructions, and relying upon a supposed authority in the maker to fill in the note, although he assumed to be a professional expert in his business, he was not liable to his principal for damages unless the defect might have been discovered by the diligent exercise of that professional skill he was bound to possess and exert.

Such an agent is responsible to his principal for the negligence of an attorney whom he employs.

(Argued June 24, 1885 ; decided October 6, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 20, 1883, which affirmed a judgment in favor of defendants, entered upon a verdict directed by the trial court.

This action was brought to recover damages for the alleged conversion of a promissory note.

In June, 1875, plaintiffs, who were the owners of a promissory note, executed to them by the Indianapolis, Bloomington and Western Railroad Company, indorsed by Benjamin E. Smith and C. B. Griggs, placed the same in the hands of defendants, who constituted a collecting agency, for collection. Defendants placed the note in the hands of A. E. Campbell, their attorney, who, with plaintiffs' consent, as defendants claimed, arranged with A. P. Lewis, the secretary and treasurer of said railroad company, for a renewal of the note for four months, with the same indorsers.

A new note was delivered by Lewis to Campbell, who thereupon surrendered the old note. The new note was not accepted by plaintiffs, they claiming that it had been altered after indorsement, by Lewis, without the authority or consent of the indorsers, and so was void as against them.

The further material facts appear in the opinion.

*W. T. B. Milliken* for appellants. The plaintiffs are to be regarded, for the purpose of considering the implied authority

of A. P. Lewis, as the *bona fide* holders, without notice of any equities between the maker and the indorsers, and for value; and the delivery of the note by the indorsers to the maker in blanks, as to the amount, gave to the agent of the maker and the indorsers an unlimited credit. (*McGrath* v. *Clark*, 56 N. Y. 34.) When by mistake a blank is left for the amount in a note, indorsed for the accommodation of the maker, the latter may fill it up for the amount intended, and the indorser is bound. (*Boyd* v. *Brotherson*, 10 Wend. 93.) And so as to blanks generally. (*Page* v. *Morrell*, 3 Keyes, 117; *Redlich* v. *Doll*, 54 N. Y. 234; *Kitchen* v. *Place*, 41 Barb. 465; *Waggoner* v. *Millington*, 8 Hun, 142; *Bank* v. *Rising*, 4 id. 793; *Hardy* v. *Norton*, 66 Barb. 527.) Even if regarded as an alteration, the words "with interest at ten per cent after maturity" were not a "material alteration." (*Troy City Bk.* v. *Lawrence*, 19 N. Y. 477; *Streeter* v. *Gillette*, 12 Hun, 278.) If the amount and interest with which the blank was filled could be regarded as unauthorized by any agreement between the indorsers and A. P. Lewis, the agent, on the ground that the aggregate amount was greater than the sum intended to be inserted, yet the note is good in the hands of a *bona fide* holder. (*Van Duzer* v. *Howe*, 21 N. Y. 531.) An exception to a direction for a verdict brings up the question, whether, on any construction of the facts, the jury would have been warranted in finding a verdict for the other party. (*Miner* v. *Mayor*, 37 N. Y. Supr. 171; *Stone* v. *Flower*, 47 N. Y. 566; *Low* v. *Hall*, id. 104.) Exception to direction to find a verdict is available without request to go to jury. (*Frecking* v. *Rowland*, 53 N. Y. 422; *Wombourg* v. *Cooper*, 2 Hun, 428.) There was conflicting evidence as to many of the material facts in this case, and the same should have been submitted to the jury. (*Sherwood* v. *Merc. Mut. Ins. Co.*, 5 Hun, 115; *Wombourg* v. *Cooper*, 2 id. 428; *Fish* v. *Davis*, 62 Barb. 122; *Stone* v. *Flower*, 47 N. Y. 566.) The evidence was en to conflicting inferences, and should have gone to the j. (*Smith* v. *Coe*, 55 N. Y. 678.) Conversion is a hostile inte. with the owner's control, and Davies' act on part-

ing with the note was not conversion. (*King* v. *Mackellar*, 94 N. Y. 317; *McMorris* v. *Simpson*, 21 Wend. 610; 2 Greenl. on Ev., § 642; *Salt Spring Bk.* v. *Wheeler*, 48 N. Y. 492; *Cairnes* v. *Bleeker*, 12 Johns. 300; *Canfield* v. *Murger*, id. 347.) Negligent performance of duty is not conversion, and can only be redressed in an action on the case. (*Dickenson* v. *Dudly*, 17 Hun, 569; *Sergeant* v. *Blunt*, 16 Johns. 74; *Laverty* v. *Smithen*, 68 N. Y. 522; *King* v. *Mackellar*, 94 id. 317.)

*Walter Edwards* for respondents. The essentials of a promissory note are " an absolute promise in writing signed but not sealed to pay a specified sum at a time therein limited, or on demand, or at sight, to a person therein named, or to his order or to the bearer." (Byles on Bills, 4; *Hall* v. *Farmer*, 5 Denio, 486.)    The insertion of either of these essentials in a note incomplete in that particular is not an alteration which avoids the instrument. (*Page* v. *Morrell*, 3 Keyes, 117; *Van-Duzer* v. *Howe*, 21 N. Y. 531; *Crutchley* v. *Clarence*, 2 M. & S. 90; *McGrath* v. *Clark*, 56 N. Y. 34; *Kitchen* v. *Place*, 45 Barb. 465.)    But as a note is perfect without any promise to pay interest, the insertion by the holder, without the assent of the indorser, of the words " with interest" is an alteration which, as to him, renders the note void. (*McGrath* v. *Clark*, 50 N. Y. 34.)    So as to words of negotiability. (*Bruce* v. *Wescott*, 3 Barb. 374; *Nazro* v. *Fuller*, 24 Wend. 374; *Angle* v. *N. H. Ins. Co.*, 92 U. S. 339.)    The note in question had been silent as to interest "after maturity," six per cent would have been awarded by the law as damages. (*South. Cent. Co.* v. *Moravia*, 61 Barb. 180; *Holland* v. *Hatch*, 11 Ind. 497; *Spitler* v. *James*, 32 id. 202.)    The ratification of an unauthorized act of an agent, in order to bind the principal, must be with a full knowledge on his part of all material facts in the case. (*Seymour* v. *Wyckoff*, 10 N. Y. 224; *Keeler* v. *Salisbury*, 33 id. 648; *Rowan* v. *Hyatt*, 45 id. 138; *Baldwin* v. *Barrows*, 47 id. 212; *Ritch* v. *Smith*, 82 id. 627.)    The defendants wrongfully surrendered the old note to Lewis and

so are liable for a conversion.   (*Laverty* v. *Snethen*, 68 N. Y. 522 ; *Potter* v. *Merch. Bk.*, 28 id. 642 ; *Booth* v. *Powers*, 56 id. 22.)

FINCH, J.   A possible view of the facts in this case is that the defendants were authorized by the plaintiffs to surrender the note, for the conversion of which they are sued, upon receiving in exchange the renewal note of the railroad company, drawing ten per cent interest, and with the same indorsers.   The note which the agents of the defendants took was a printed form, indorsed by Smith and Griggs, while blanks for the date, the amount and the payees were left unfilled, and was one of a number placed by them in the hands of Lewis, the secretary and treasurer of the railroad company, for use in that company's business.   One of the indorsers, Smith, was president of the company, and so far as he is concerned, there was sufficient evidence in the case to have made possible a finding by the jury that he had authorized the insertion of the special clause making the note draw ten per cent interest after maturity. The law of Indiana, while fixing the normal rate of interest at six per cent, permitted special agreements for a higher rate, not exceeding ten per cent, and the debt of which the last note was an attempted renewal had drawn ten per cent interest from its origin.   Smith must be presumed to have known and understood the fact, and Lewis swears that the president expressly authorized the final note to be given ; while further proof indicates a ratification by Smith, who offered to settle the note by turning out bonds.   But there are no such facts as to Griggs.   The case does not show that he was in any manner connected with the company ; that he knew the terms or amounts of the renewals ; that he in any form recognized or ratified the note, or consented to the special agreement for interest.   So far as he is concerned he stands simply as an accommodation indorser, delivering the note in blank to Lewis, and conferring upon the latter no other authority than that which the law implies from such delivery.

The first question, therefore, presented by the appeal is

whether the delivery of the note in blank authorized Lewis to add to it the clause fixing a rate of ten per cent interest after maturity. The general doctrine appears to be that one who signs and delivers a note in blank, to be used as a security, authorizes the holder to fill the blanks in respects essential to the completeness of the note as a note. The transaction implies that the indorser meant to become liable as such upon a completed and perfected note, and so far as the same is, at the time of his signature, an incomplete and imperfect instrument, he must be held to have authorized the filling of such blanks by the agent intrusted with the note for use. The date, the amount, the name of the payee, and place of payment may be inserted in their appropriate blanks. (*Page* v. *Morrell,* 3 Keyes, 117; *Van Duzer* v. *Howe,* 21 N.Y. 531; *Kitchen* v. *Place,* 41 Barb. 465; *Angle* v. *N. W. M. L. Ins. Co.,* 92 U.S. 339). But in all the cases cited there was a blank so left in the body of the note as to indicate to the eye of the indorser, when it left his hand, that something needed to be supplied which was necessary to be inserted to make the instrument operate as the note for which it was intended. The form of the note in question as signed by the indorsers gave no indication that it was to draw interest at all, and left no blank for that purpose. At its commencement, in the place usually occupied by a date, a blank was left between the word "Indianapolis" and the figures "1875," which the indorser would expect, and so authorize to be filled by completing the imperfect date. Another blank existed at the beginning of the note before the words "after date." The length of time the note should run before maturity was here indicated and properly filled by inserting the words "four months." The printed form ran on in the usual way until a remaining blank was left between the words "to the order of," and the word "dollars," which ended the body of the note. The words "to the order of" indicated and so authorized the insertion of the name of the payee, and the word "dollars" permitted the prefix in the blank of the principal sum to be paid. In that blank, and between those printed words, nothing else was

indicated or authorized. Nothing else can be said to have been within the intention or expectation of Griggs, or within his authority, he standing as a mere accommodation indorser, and ignorant of the particular purpose or precise debt to which the completed note was to be applied. To go further than that would be to break down prudent barriers and reach beyond any reasonable inference to be derived from the presence of the blanks. In this case, matter wholly foreign to the indicated words of completion, and needless for such completion was inserted and crowded in for want of sufficient room. Such matter consisted of a special agreement that the note from and after its maturity should draw ten per cent interest. That was a material alteration of the note from its terms as authorized by the indorsement and delivery of Griggs. It was a stipulation in no manner essential or necessary to the note as a completed instrument. It altered the legal rule as to damages for a breach; looked to a new liability beyond the maturity of the contract; and imposed upon the indorser an added risk and burden which nothing in the record shows that he ever contemplated or deemed possible. We think the courts below were right in saying that the alteration was material, and discharged the indorser not authorizing or ratifying it.

It follows that the defendants ought not to have accepted the new note and surrendered the old one, and that in so doing they did not, in truth, obey their instructions. But it was not a conscious deviation. · Acting in perfect good faith, they took what appeared to be, and what they believed to be, the note which they were authorized to take, and which only proves to be not such by reason of the defective authority of a third person upon whom they relied. Where there is thus entire good faith, and an apparent and supposed obedience to instructions, are they liable to the principal for an unknown and concealed defect which thwarts and vitiates their action? We think that question depends upon the further inquiry whether the defect which existed was one which might have been discovered by the diligent exercise of that professional skill which they were bound to possess and exert. They were not insurers,

but they were, and held themselves out to be, professional experts in the business which they assumed to do. They undertook to make collections at all points in the country through local agents and attorneys whom they employed and represented as skillful and reliable. They took this note for collection, and so became responsible for the negligence of the attorney whom they employed upon terms known only to themselves. (*Bradstreet* v. *Everson*, 72 Penn. St. 124.) Was, then, Campbell negligent? Did he supply the professional diligence and skill due to his employers, and did the injury happen without his fault? The question may take another form. Could the defendants, through Campbell, their agent, by due diligence and the exercise of the skill of good practitioners (Wharton, § 596) have obtained a new note with the valid indorsement of both the old indorsers; and did the injury result from that want of skill or diligence, or both? It is quite plain that here we have a question of fact. Very much may be said on both sides. Campbell sent to Lewis a new note to be signed and indorsed. Lewis sent back the printed note with the blanks filled. This fact, coupled with the known residence of both indorsers out of the State, would naturally suggest to a very moderate professional skill that the indorsers had signed before the blanks were filled, and that Lewis had inserted the special agreement in the absence of Smith and Griggs. Two cases in his own State might have suggested to Campbell the very doubtful result of Lewis' act, (*Holland* v. *Hatch*, 11 Ind. 497 ; *Spitler* v. *James*, 32 id. 202); and an inference from these facts might be drawn unfavorable to the attorney's skill or diligence. On the other hand, there is evidence that the plaintiffs, through their banker, Robinson, put Davies, and through him Campbell, into communication with Lewis as the person representing both the company and the indorsers; that the bulk of the correspondence was shown to Robinson, and especially the letter from Lewis which inclosed the new note, and in which he writes: "I have drawn note, with interest at ten per cent after maturity," and that the precedent forbearance had been at the same rate.

From these facts it is argued that the plaintiffs taught Campbell to rely on the authority of Lewis and trust to his action, and did so themselves. On both sides there were contradictions, and the facts above stated were involved in more or less of controversy. We cannot, therefore, say as matter of law that the defect in the indorsement of Griggs, growing out of the special agreement, should have been discovered by Campbell, and proves his want of skill or his negligence. It was a question which could not be taken from the jury without the assent of the defendants. The latter first took the note for collection. That did not bind them absolutely to collect. It did bind them to make the effort with good professional skill and with faithful diligence. When, with the plaintiff's consent, if indeed that was given, they undertook to get a new note with the same indorsers, it did not bind them absolutely to secure that result. It did bind them to use competent skill and due diligence in the effort, but if, notwithstanding that, the result was not reached from any cause not within their control, they incurred no liability, and cannot be held to have converted the old note which they delivered up. If it be said that in either event—that of failure to collect or to obtain the requisite note — a duty of the defendants yet remained to return the old note on demand, it seems to us a just answer that such return became impossible through the surrender of the note to Lewis, and the only debatable question is whether that impossibility arose out of the want of due professional skill or of proper diligence on the part of defendants and their agents. That question is not without difficulty, but it is one of fact upon which we express no opinion, and which must be left to the judgment of a jury. The case, therefore, was improperly treated as involving only a question of law. The defendants excepted to that ruling, and while they did not ask to go to the jury, they did not concede that none but questions of law were involved by themselves asking judgment in their favor at the hands of the court.

The judgment should be reversed and a new trial granted, costs to abide the event.

MILLER, EARL and DANFORTH, JJ., concur; RUGER, Ch. J., and RAPALLO, J., concur in result; ANDREWS, J., not voting.

Judgment reversed.