THE BRADFORD NATIONAL BANK, Appellant, *v.* HASCAL L. TAYLOR, *Respondent.*

*Action on a note — fraudulent alteration — liability of an indorser in blank — evidence.*

If the legal liability of the maker of commercial paper is changed in a material respect by a fraudulent alteration of his obligation, such alteration vitiates the instrument, and the question whether it is a material alteration or not is one of law for the court.

If the maker of a note fails to carry out his understanding in regard to the same with the indorser thereof in blank, as between the innocent holder of the note for value and the indorser the latter must suffer.

It is a general rule that an indorsement on a blank note, without sum or date or time of payment, will bind the indorser for any sum payable at any time which the person to whom the indorser intrusts it chooses to insert.

Upon the trial of an action brought upon a promissory note against the indorser thereof, the plaintiff offered to show that à certain mortgage given by the maker thereof to the indorser was sufficient to amply indemnify him for his indorsement, and further offered to show that the maker's financial condition had changed for the worse during the time the indorser had in his possession two other notes to take up which the note in suit was given. Such evidence was excluded.

*Held,* that the evidence was material as bearing upon the defendant's right to repudiate his indorsement and as tending to show a good consideration for the note, and should have been admitted.

APPEAL by the plaintiff, The Bradford National Bank, from an order of the Supreme Court, made at the Genesee County Special Term and entered in the office of the clerk of the county of Erie on the 4th day of April, 1893, denying the plaintiff's motion for a new trial made upon a case and exceptions as settled.

*Charles F. Tabor,* for the appellant.

*John G. Milburn,* for the respondent.

LEWIS, J.:

The defendant, in the spring or summer of 1888, at the request and for the accommodation of a Mr. B. F. Smith, the maker, indorsed in blank two promissory notes of $1,000 each, and delivered them to Smith. The indorsements were made in Bradford, Pa., and the notes were made payable at the plaintiff's bank in that city. Printed blanks were used in preparing the notes. The figures " 188 " were printed in the blanks for the year, and at the time of indorsing the notes, the figure " 8 " was added, so that the year read " 1888." There were blank places in the notes for the day and month and for the time the notes were to run. These were left unfilled when the defendant indorsed the notes and delivered them to Smith. Smith was a personal and business friend of the defendant. He stated to the defendant that he intended to use the notes in the purchase of some oil wells, but he did not wish to use them just then, but would in the course of two or three months, and for that reason did not wish to date the notes then, but desired the defendant's indorsement then, as he was at the time in the city of Bradford and intended shortly to return to his home in Buffalo. The defendant assented to all this, and indorsed the notes and delivered them to Smith with

the understanding that when Smith wished to use them he should be at liberty to fill in the blanks and procure the discount of the notes by the plaintiff. Smith, not having occasion to use the notes sooner, retained them until the 9th day of September, 1890, when he filled up the blanks in one of the notes with the words and figures "September 9th," and changed the figures "1888" to "1890," and made the note payable four months after date at the plaintiff's bank. The plaintiff, at Smith's request, thereupon discounted the note and paid the proceeds of the discount to Smith. Smith retained possession of the other note till the 16th day of October, 1890, when he in like manner filled in the blanks with the words and figures, "October 16th, 1890," changing the figures "88" to "90," and made the note payable in three months from date at the plaintiff's bank, and the plaintiff thereupon discounted it for Smith and paid him the proceeds thereof. When the notes were about maturing, Smith, not being able to take them up, wrote the defendant, under date of January 3, 1891, as follows:

"H. L. TAYLOR, Esq., Buffalo, N. Y.:

"DEAR SIR — Some time ago you indorsed two notes of $1,000 each for me. I told you I would only use them in case of necessity. I did not use them until September last. They will be due this 12th and 19th. The indorsement I asked you for when I was in Buffalo, last month, was for the purpose of lifting these notes and to margin my oil to forty cents. I have gotten along all right so far, but these notes (owing to the continued tightness in money) are bothering me, and I should like very much to get them renewed, and with this in view I inclose you two new notes which if you feel that you can I should like very much to have you indorse, and I will send you the others on the dates they are due. Please return the inclosed notes, indorsed or not, in the inclosed envelope. I don't think you would be running great risk, as I own twenty wells, against which there is only $1,700. I am sorry to bother you, and in any event will try not to do so again."

To which Mr. Taylor replied, under date of January 7, 1891:

"B. F. SMITH:

"DEAR SIR — I have your letter of January 3rd. I was not aware that you had my notes for $2,000. Had I been I should

have demanded them long ago. I supposed they had been used and destroyed, or destroyed at least, long before now. Your using them at so late a date without notice to me is clearly a sufficient reason for my declining to go any further in this matter. I return the notes inclosed in your letter."

The following correspondence followed between Smith, the bank and the defendant :

"BRADFORD, PA., *January 9th,* 1891.

" H. L. TAYLOR, Esq. :

" DEAR SIR — Yours of the 7th inst. at hand. There was no limit placed upon the time in which I was to use the notes referred to, and I had no reason to think that your confidence in my honesty had been lessened in any way. I expect to be able after a little to clear up my matters so that you will be entirely released. However, I will be unable to attend to it at their maturity January 12th and 19th, and would ask you to write the Bradford National Bank waiving protest on same. I will have the matter cleared up just as soon as possible. I am negotiating the sale of a lease I am interested in in Forest county, which if successful will enable me to do so very soon.

" Very truly,

" B. F. SMITH."

BUFFALO, N. Y., *January 10th,* 1891.

" B. F. SMITH, Esq. :

" SIR — I have your letter of yesterday, and in reply will say that I had confidence in your honesty but not in your operations on the market. I loaned you my name at the time wholly for your accommodation to be used, you said, in the purchase of some wells, not for one or two years afterwards, but at that time, or very soon. The keeping of these notes and using them so long afterwards to speculate in oil, without consent or notice, is a fraud on me to which I will not consent. If these notes are not paid the day they are due I cannot answer for the consequences to you. Not having indorsed these notes for use at the time they were used, I shall not waive notices. I do not think I am holden for payment.

" H. L. TAYLOR."

"BRADFORD, PA., *March* 23, 1891.

"H. L. TAYLOR, Esq.:

"DEAR SIR — Please let me hear from you in regard to two notes of B. F. Smith indorsed by you, which are past due and remain unpaid.

"One was protested January 12th and the other January 19th.

"Yours respectfully,

"S. P. KENNEDY,

"*Cashier.*"

"BUFFALO, N. Y., *March* 24, 1891.

"S. P. KENNEDY, *Cashier:*

"DEAR SIR — I have your favor of date yesterday. I supposed these notes had been paid or extended by Smith. He wrote me Jan. 3, saying he would arrange for them soon, and that he had twenty wells against which there was only $1,700. On Jan. 9 he wrote me again saying he would have the matter cleared up, that he was negotiating the sale of a lease in which he was interested in Forest county. I wish you would get him to secure these notes on his wells or something else, as it is in your line of business and you are there to attend to it. I will send you the money when you want I should pay it, and wish you would take the matter in hand and kindly look after the ultimate collection of the debt for me. I have no doubt Smith will make all the papers necessary and pay all the costs necessary if, as he says, he has the property he tells me about.

"I remain, very truly yours,

"H. L. TAYLOR."

"BRADFORD, PA., *Sept.* 10, 1891.

"H. L. TAYLOR, Esq., Buffalo, N. Y.:

"DEAR SIR — I expected to have been able to take up those two notes for $1,000 each at the Bradford National Bank, but the sale of property I was negotiating fell through owing to the decline in oil, and I had bought the royalty in my wells and have had that to pay for, and on these low prices that was all I could do. I dislike very much to ask you to renew them, but I have no other way left on this low market. I am ready now or at any time to secure the payment of these notes by a mortgage on my one-half interest in fourteen wells that I bought from P. T. Kennedy two years ago for

$4,600 (for half), and on which there is $1,500 still owing, and that is all there is against it. There are three boilers, fourteen engines, and everything in first-class condition. I feel in hopes that three months will tide us through to better prices and that I can sell some property and pay the notes. I have always paid 100 cents on the dollar and will pay these notes.

" Yours truly,

" B. F. SMITH."

" BRADFORD, PA., *Sept.* 11, 1891.

" H. L. TAYLOR, Esq. :

" DEAR SIR — Mr. B. F. Smith has not got his matter in shape yet and would like three months more. We told him to write you and if satisfactory to you it would be to us, as undoubtedly you prefer to have us carry it a short time longer than to take it up yourself.

" If satisfactory please indorse note and return to us and we will cancel the others. We believe that he had explained his matters to you to show you how he stands, and is perfectly willing to give you a mortgage at any time. We know of one piece that he bought of Mr. P. T. Kennedy for $4,600 on which he only owes $1,500, and his other statements we have always found correct.

" Yours truly,

" S. P. KENNEDY,

" *Cashier.*"

" BUFFALO, *Sept.* 12, 1891.

" S. P. KENNEDY, *Cashier :*

" DEAR SIR — I have your very kind letter of yesterday with inclosure of note, which I have indorsed and return in this. I have written Mr. Smith and have asked him to make a leasehold mortgage on the property mentioned to you and him, to you or to me, for you to hold for payment.

" Very truly yours,

" H. L. TAYLOR.

" P. S. Will you kindly return to me the notes given, with your stamp upon them.

" H. L. T."

The note so indorsed was the one in suit, which was made by Smith bearing date September, 1891, for $2,000, payable to defend-

ant's order three months after date at plaintiff's bank; it was sent to the plaintiff to take up the two $1,000 notes aforesaid, which were canceled and mailed to the defendant by the plaintiff, and Smith executed and sent to the defendant the mortgage on his oil property as agreed. On receiving the notes thus returned the defendant discovered the alteration in the figures "1888." He shortly thereafter returned the mortgage to Smith. He retained the canceled notes for about three months, and after taking advice of his lawyers as to his liability upon the note in suit, he offered to return the two $1,000 notes to plaintiff, and repudiated his liability as indorser of the note in suit. These are all the facts which it is deemed necessary to state.

The court, among other things, charged the jury as follows : " As I have already suggested, if Mr. Taylor's version is the true one, that this note was dated in 1888, and thereafter, in the year 1890, Mr. Smith, without the consent and concurrence of Mr. Taylor, changed the date of the year 1888 to the year 1890, that would constitute such an alteration of that instrument as would relieve Mr. Taylor from the obligation of the promise contained in and imposed by his indorsement upon these two promissory notes," to which charge plaintiff's counsel duly excepted, and this exception presents one of the questions for our decision.

If the legal liability of the maker of commercial paper is changed in a material respect by a fraudulent alteration of his obligation, such alteration vitiates the instrument, and the question whether it is a material alteration or not is one of law for the court. (*Crawford* v. *West Side Bank*, 100 N. Y. 56.)

If the defendant has brought his defense within this rule of law he is entitled to hold his verdict. When he indorsed the note in suit he was fully aware of the time when the two $1,000 notes had been made payable by Smith; they were not made payable with interest.

There is nowhere in the record an intimation that there was any restriction upon Smith as to the time he should make the notes payable. Had Smith dated them at any time within two or three months after the indorsements were made, and fixed the time they were to run so that they would fall due respectively on the days in January, 1891, mentioned, and procured plaintiff to discount them,

Taylor's liability on them as indorser would not be questioned. How was the date then material to the defendant? Except to fix the times they were to fall due, it was not material whether they bore any date. The question in which he was interested was the time of payment, and that, as we have seen, he left entirely with Smith. He undoubtedly supposed that they would be dated and used some time along during the summer of 1888, but, as we have seen, he delivered his indorsement to Smith without fixing the time when the notes should be used, and if Smith failed to carry out an understanding in that regard, as between an innocent holder of the notes for value and the defendant, the latter must suffer. "It is the general rule that an indorsement on a blank note, without sum or date or time of payment, will bind the indorser for any sum, payable at any time, which the person to which the indorser intrusts it chooses to insert." (*Page* v. *Morrell*, 3 Keyes, 118 ; *Weyerhauser* v. *Dun*, 100 N. Y. 154.)

The court correctly charged the jury as follows : " If you find the notes had been changed, and that Taylor, at the time he indorsed this last note, knew of it, the plaintiff is entitled to recover.  Or if he did not have actual knowledge of it, if he had knowledge of such a state of facts as would put him upon inquiry, then the plaintiff is entitled to recover." The evidence, we think, established beyond any reasonable question that the defendant, when he indorsed the note in suit, was aware of every material fact touching the filling of the blanks by Smith. He had information as to about the time they bore date, for, as we have seen, Smith wrote him that he used them in September, 1890, and that they would fall due on the 12th and 19th of January, 1891. It is true he did not know of the changes of the figures " 88 " to " 90." It must be assumed that he was sufficiently familiar with the rules of banking to know that the bank would probably require that the notes should bear some date before purchasing them, and the only reasonable inference a business man would draw who had loaned his indorsement as the defendant did in this case, would be that the maker would date the paper at or about the time he desired to use it ; and the defendant's letter to Smith, under date of January 10, 1891, in which he says : " I loaned you my name at the time wholly for your accommodation, to be used, you said, in the purchase of some wells, not

for one or two years afterwards, but at that time, or very soon. The keeping of these notes and using them so long afterwards to speculate in oil, without consent or notice, is a fraud on me. to which I will not consent," shows that he so understood it. He must be held to have known that Smith had either dated the notes at the time he used them or had left the figures " 1888 " in the notes and had so filled the blanks as to make them payable in January, 1891. Being thus advised, he indorsed the note in suit and received in exchange for it from the plaintiff bank the two $1,000 notes stamped paid, and also received from Smith the collateral mortgage mentioned. All this is entirely uncontradicted, and yet the jury found that he indorsed the last note without being aware of the situation and without having sufficient information to put him upon inquiry to ascertain the real facts. Such finding was against the undisputed evidence of the defendant himself. After being informed of every material circumstance relating to the alteration of the notes, the defendant consented to indorse the note in suit, delivered it to the plaintiff, required the return of the two notes canceled, and retained them for three months, and all this after he was informed of the use of the notes by Smith two years and more after the time he made the indorsements.

The plaintiff offered to show upon the trial that the mortgage referred to was ample indemnity for the defendant's indorsement, and further offered to show that Smith's financial condition had changed for the worse during the time the defendant held the two $1,000 notes. This evidence was excluded and plaintiff duly excepted. This evidence would seem to have been material as bearing upon the defendant's right to repudiate his indorsement. It tended to show a good consideration for the note in suit. While he held these notes the right of the plaintiff to proceed against Smith to collect the same was suspended. (*Place* v. *McIlvain*, 38 N. Y. 99.)

For the reasons stated the order appealed from should be reversed and the verdict set aside and a new trial granted, with costs to abide the event.

DWIGHT, P. J., concurred ; HAIGHT, J., not voting.

Order denying plaintiff's motion for a new trial, appealed **from,** reversed and new trial granted, costs to abide the event.