THE FARMERS' NATIONAL BANK of Adams, Respondent, v. SANFORD S. THOMAS and Another, Appellants.

*Blanks left in a note — implied authority to fill in the same — extent of such authority — presumption that a transaction was varied without consent — material change in a note.*

The delivery of a note or written contract, with blanks in it, authorizes the receiver and his transferees to fill in the blanks in the way agreed upon or contemplated by the maker. Such authority is derived wholly from the implied agency created by the maker's delivering the paper with blanks therein, extends only to cases where a blank has been left in the instrument, and does not include any authority to make additions.

A person who signs and delivers a note in blank, to be used as security, authorizes the holder to fill in the blanks so far as may be essential to make the note complete. The date, the amount, the name of the payee, the time and place of payment, may all be inserted in their appropriate places where they are left blank, but such authority extends only to cases where a blank is left in the body of the note so as to indicate that something should be supplied which is necessary to make the note operate as was intended.

In the absence of an express agreement, no authority can be implied from the delivery of a note to insert therein anything not necessary to the completion of the note in accordance with its form when delivered, and nothing can be inserted or added which would vary or alter its material terms or be repugnant to what was expressed in the instrument when delivered.

By the delivery of a note in blank indorsed by the person delivering the same, no implied authority is given to the person to whom the same was delivered to fill in such note the words "with interest," when there is no blank left therefor, or to write in the blank preceding the words "after date," the words "on demand."

A change of a note from a time note without interest to a demand note with interest, is a material alteration therein, which, in the absence of authority in the person making such change to do so, will release the indorser thereof from liability thereunder.

Where one, whose rights are to be varied by a transaction, was not present when it was consummated, it is to be presumed, in the absence of other evidence, that it was done without his consent.

APPEAL by the defendants, Sanford S. Thomas and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 24th day of January, 1893, upon the report of a referee.

*Levi H. Brown,* for appellant W. H. Seward Thomas.

*L. E. Pruyne* and *Watson M. Rogers,* for the respondent.

MARTIN, J.:

This action was brought to recover the amount secured by twelve promissory notes made by the defendant Sanford S. Thomas, and claimed to have been indorsed by the defendant W. H. Seward Thomas, aggregating the sum of $17,000, besides interest. The principal defense was that the notes in suit were indorsed by Seward before they were either signed by Sanford, or the date, time they were to run, the name of the payee, or the amount, were inserted therein; and that when they were delivered to the plaintiff they had been filled out by Sanford, or the plaintiff's cashier, in a manner wholly unauthorized, to the knowledge of the plaintiff, and, therefore, that they were void as against the defendant Seward.

Before each of the notes in suit was given, the defendant Seward indorsed and delivered to Sanford a blank thereof, which was as follows:

"$ . . . . . . . .          ADAMS, N. Y., . . . . . . . ., 18 . . .

". . . . . . . . . . . after date, . . . . promise to pay to the order of . . . . . . . . . . . . . . . . . . . . . . . ., . . . . . . . . . . . . dollars at the Farmers' National Bank, Adams, N. Y., value received.

"No. . . . ., due . . . . . . . . . . . . . . . ."

These were subsequently filled out by the defendant Sanford, or the cashier of the plaintiff for him, so as to make them payable on demand, instead of at a specified time after date, and by adding either the words "with use" or "with interest." They were indorsed by Seward for the accommodation of Sanford to enable him to fill them up and procure them to be discounted at the plaintiff's bank. They were taken by the plaintiff for a valuable consideration, but with a knowledge that Seward was an accommodation indorser, and of the change made in the form of the notes. When such indorsements were made by Seward, there was no express agreement between him and Sanford, or any direction by him to Sanford, as to when the notes should be used, the amounts for which they should be given, the time within which they should be made payable, or whether the same should be made payable on demand or with or without interest. Many times, prior to indorsing the blanks upon which the notes in suit were written, Seward had indorsed blank notes for the defendant Sanford as the notes in suit were indorsed. All of those notes had been made payable at specified times after date, usually about three months, and without interest. When the first note in suit was filled up, the plaintiff's cashier told Sanford that the notes might be made payable on demand, if he desired, so they would not be going to protest, and that the bank would charge interest on them every three or six months. The change in the form of the notes, indorsed by the defendant Seward for the accommodation of Sanford from time notes without interest to demand notes with interest, was made without consultation with Seward and without his knowledge or consent.

The single question presented upon this branch of the case is whether Sanford had authority to change the form of the notes indorsed by Seward from time notes without interest to notes payable on demand with interest. If he did not possess that authority then the plaintiff's judgment cannot be upheld. As he had no express authority to make such change, it follows that the only authority he had was such as was to be implied from the fact that blanks were left in the form of the notes indorsed.

The leaving of blanks in a note or written contract, and delivering it, creates an agency in the receiver and his transferees to fill

the blanks in the way agreed upon or contemplated by the maker. That authority is derived wholly from the implied agency, created by the maker's delivering the paper with blanks therein, extends only to cases where a blank has been left in the instrument, and does not include any authority to make additions. The general principle seems to be that a person who signs and delivers a note in blank, to be used as security, authorizes the holder to fill in the blanks so far as is essential to make the note complete. The date, the amount, the name of the payee, the time and place of payment, may all be inserted in their appropriate places where they are left blank. This authority, however, extends only to cases where a blank was so left in the body of the note as to indicate that something was necessary to be supplied to make the note operate as the note for which it was intended. But in the absence of an express agreement, no authority can be implied from the delivery to insert anything not necessary to the completion of the note in accordance with the form when delivered, and nothing can be inserted or added which would vary or alter its material terms, or be repugnant to what was expressed in the instrument when delivered. (*Weyerhauser* v. *Dun*, 100 N. Y. 150; *National Ulster County Bank* v. *Madden*, 41 Hun, 113; S. C., 114 N. Y. 280; *McGrath* v. *Clark*, 56 id. 34; *Reeves* v. *Pierson*, 23 Hun, 185; *Angle* v. *N. W. Mut. L. Ins. Co.*, 92 U. S. 330; Tiedeman on Com. Paper, § 283.)

In *Weyerhauser* v. *Dun* (100 N. Y. 150, 155) FINCH, J., said: "The general doctrine appears to be that one who signs and delivers a note in blank, to be used as a security, authorizes the holder to fill the blanks in respects essential to the completeness of the note as a note. The transaction implies that the indorser meant to become liable as such upon a completed and perfected note, and so far as the same is, at the time of his signature, an incomplete and imperfect instrument, he must be held to have authorized the filling of such blanks by the agent intrusted with the note for use. The date, the amount, the name of the payee and place of payment may be inserted in their appropriate blanks. (*Page* v. *Morrell*, 3 Keyes, 117; *Van Duzer* v. *Howe*, 21 N. Y. 531; *Kitchen* v. *Place*, 41 Barb. 465; *Angle* v. *N. W. M. L. Ins. Co.*, 92 U. S. 339.) But in all the cases cited there was a blank so left in the body of the note as to indicate to the eye of the indorser, when it left his hand, that

something needed to be supplied which was necessary to be inserted to make the instrument operate as the note for which it was intended. The form of the note in question, as signed by the indorsers, gave no indication that it was to draw interest at all, and left no blank for that purpose. At its commencement, in the place usually occupied by a date, a blank was left between the word ' Indianapolis ' and the figures ' 1875,' which the indorser would expect and so authorize to be filled by completing the imperfect date. Another blank existed at the beginning of the note before the words ' after date.' The length of time the note should run before maturity was here indicated and properly filled by inserting the words ' four months.' The printed form ran on in the usual way until a remaining blank was left between the words ' to the order of ' and the word ' dollars,' which ended the body of the note. The words ' to the order of ' indicated and so authorized the inser- tion of the name of the payee, and the word ' dollars ' permitted the prefix in the blank of the principal sum to be paid. In that blank and between those printed words nothing else was indicated or authorized. Nothing else can be said to have been within the inten- tion or expectation of Griggs, or within his authority, he standing as a mere accommodation indorser, and ignorant of the particular purpose or precise debt to which the completed note was to be applied. To go further than that would be to break down prudent barriers and reach beyond any reasonable inference to be derived from the presence of the blanks. In this case matter wholly foreign to the indicated words of completion, and needless for such comple- tion, was inserted and crowded in for want of sufficient room. Such matter consisted of a special agreement that the note from and after its maturity should draw ten per cent interest. That was a material alteration of the note from its terms as authorized by the indorse- ment and delivery of Griggs. It was a stipulation in no manner essential or necessary to the note as a completed instrument. It altered the legal rule as to damages for a breach, looked to a new liability beyond the maturity of the contract, and imposed upon the indorser an added risk and burden, which nothing in the record shows that he ever contemplated or deemed possible. We think the courts below were right in saying that the alteration was material, and discharged the indorser not authorizing or ratifying

it." The *Weyerhauser* case was followed in *National Ulster County Bank* v. *Madden* (41 Hun, 113), and the court there said: "The maker or indorser who delivers his note or check to a third party does not thereby authorize him to fill existing blanks therein unless it is obvious that such blanks must be filled to make the note or check operate as the instrument for which it was intended." This case was reversed (114 N. Y. 280), but upon this question it was held that the alteration was a material one, and having been made after the defendant's indorsement, and without his consent, it presumptively required the conclusion that the checks so altered were invalid as against the indorser; that the presumption in such a case is that it was so made as to vitiate it, and the burden is with the party seeking to make an altered instrument the basis of recovery to relieve it from the effect of the unauthorized alteration.

In *McGrath* v. *Clark* (56 N. Y. 34) the defendant indorsed a promissory note, the blank upon which it was written being like the blanks in this case except that the place of payment was blank, and the date and amount were inserted, thus leaving the time and place of payment blank, and delivered the same to the maker, who filled the blanks and added the words "with interest." In an action against the indorser it was held that while the delivery of the note to the maker gave him an implied authority to fill the blanks by inserting any time and place of payment he chose, it did not authorize the addition of the words "with interest," and that this was a material alteration which invalidated the note as against the defendant, in the absence of proof of some authority therefor aside from the delivery. The doctrine of that case was followed in *Reeves* v. *Pierson* (23 Hun, 185).

In *Angle* v. *N. W. Mutual Life Ins. Co.* (92 U. S. 330), in delivering the opinion in that case Mr. Justice CLIFFORD said: "Persons dealing with an agent are entitled to the same protection as if dealing with the principal, to the extent that the agent acts within the scope of his authority. Pursuant to that rule it is settled law that where a party to a negotiable instrument intrusts it to another for use as such, with blanks not filled up, such instrument so delivered carries on its face an implied authority to complete the same by filling up the blanks; but the authority implied from the existence of the blanks would not authorize the person intrusted

with the instrument to vary or alter the material terms of the instrument by erasing what is written or printed as part of the same, nor to pervert the scope and meaning of the same by filling the blanks with stipulations repugnant to what was plainly and clearly expressed in the instrument before it was so delivered. By virtue of the implied authority such a depositary may perfect, in his discretion, what is incomplete, by filling the blanks; but he may not make a new instrument by erasing what is written or printed, nor by filling the blanks with stipulations repugnant to the plainly expressed intention of the same as shown by its written or printed terms. (*Goodman* v. *Simonds*, 20 How. [U. S.] 361; *Bank* v. *Neal*, 22 id. 108.)" In Tiedeman on Com. Paper, § 283, it is said: "But in every case where the maker is held to be bound to the *bona fide* holder on an instrument filled up by an agent in violation of instructions, it will be found that the additions or insertions made by the agent are in conformity with the apparent character and object of the blank. A *bona fide* holder cannot recover on an instrument containing unusual provisions which conflict with the ordinary parts of like instruments, or which are repugnant to its object. Indeed, the holder of such an instrument cannot properly be called a *bona fide* holder; for a holder is charged with every inconsistency or defect appearing on the face of the instrument." Where one whose rights are to be varied by a transaction was not present when it was consummated, it is to be presumed, in the absence of other evidence, that it was done without his consent. (*McNulty* v. *Hurd*, 86 N. Y. 547.)

The form of the blank notes indorsed clearly evinces that they were intended to be filled out and used as bank notes only; that the holder was authorized to insert therein a specified time after date for their payment; that they were to be used by being discounted at the bank, and that they were not to be so drawn as to become a continuing security for the debt of the maker with interest. This not only appears from the form of the note, in which there was no blank for the words "with interest," and in which the blank preceding the words "after date" plainly indicated that a specified time was to be inserted, but it also appears from the course of dealing between the parties which had existed for several years before the notes in suit were given. It is quite obvious that the plaintiff,

through its cashier, must have known and understood when these notes were taken that such was the purpose and intent of the indorsement, and that the unusual and inconsistent form of the notes as filled out was not within the implied powers given by the delivery of the notes in blank. I think it is manifest that, while the holder of these notes had implied authority to make them payable at any specified time or for any specified amount he saw fit, he had no authority to make them payable on demand and with interest. The indorser could not have contemplated the making of such notes when he indorsed the blanks upon which they were written, as the form was that of a time note without interest. The change of the notes from time notes without interest to demand notes with interest, was repugnant to the plain intention as expressed by the printed form of the notes.

It cannot be said that this was not a material change. In the time note the extent of the indorser's liability would be measured by the amount inserted when the note was made. It would become due at a specified time, and if not paid, the indorser would be entitled to notice of its non-payment and protest. When changed to a note payable on demand with interest, it became a continuing security for the amount of the note and interest. On such a note the indorser's liability would be measured neither by any definite time, nor definite amount. He would remain liable until an actual demand was made. If kept alive as to the maker, it might remain unpaid, and the indorser's liability continue until the interest equaled or even exceeded the principal debt, and the Statute of Limitations would be no bar to an action thereon. (*Shutts* v. *Fingar*, 100 N. Y. 539.) That any such added burden or risk was contemplated by the indorser, or that any authority to create such liability was to be implied from the indorsement of these notes in the form in which they existed, cannot, I think, be properly maintained.

I am of the opinion that neither the maker nor the holder of these notes had any authority, either express or implied, to so alter them as to make them payable on demand with interest, and that the act of so altering or filling them out was unauthorized, and as the facts were known to the plaintiff's cashier, the notes were void as to the defendant Seward Thomas, and the plaintiff was not entitled to recover thereon as against him.

This conclusion renders it unnecessary to consider the other questions discussed by counsel in their briefs.

Judgment as to W. H. Seward Thomas must be reversed and a new trial granted, with costs to abide the event, and as to Sanford S. Thomas, judgment affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment as to W. H. Seward Thomas reversed and a new trial granted, with costs to abide the event, and as to Sanford S. Thomas, judgment affirmed, with costs.