Arthur L. Whitely (Plaintiff), Appellee, v. Charles H. Bartlett et al. (Defendants).
Appeal of Charles H. Bartlett et al., Appellants.

Gen. No. 36,059.

Opinion filed May 24, 1933.

ERWIN F. STOLLE, for appellants; MILFORD H. OLDS, of counsel.

CULVER, ANDREWS, SEITER & GILMORE, for appellee; ORVILLE R. SEITER, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

By this appeal Charles H. Bartlett, Walter Deemer and L. Percy Owen, defendants, seek the reversal of a judgment against themselves and Leslie G. Arries, in a suit on a promissory note given by all the defendants and payable to plaintiff. Arries defaulted. The judgment is upon the verdict of a jury.

To the declaration filed in the case, the defendants appealing filed pleas of *non assumpsit* and of payment and an affidavit of merits, in which it is alleged that the money obtained from plaintiff on the note sued on was loaned by plaintiff to Leslie G. Arries; that Arries, without instruction or authority from the other defendants and signers of the note, and without their knowledge, took a note which was signed by them in blank, filled in the blanks, including the name of plaintiff and the amount of the note, delivered it to plaintiff, and received from plaintiff the amount of the note. In the affidavit of merits these defendants appealing further allege that Arries appropriated such funds to his own use. The affidavit further recites that thereafter Arries gave the plaintiff his individual check in payment of the note in question, received the note back from plaintiff marked "cancelled" with the signatures torn therefrom, and that the note was destroyed.

The testimony of the plaintiff is to the effect that about July 20, 1929, Leslie G. Arries, one of the defendants, presented to plaintiff a note signed by all the defendants for the sum of $2,500; that he, plaintiff, knew Bartlett fairly well and Deemer slightly; that at the time the note was first presented to plaintiff it contained no payee's name, no place of payment, and no date; that Arries requested plaintiff to advance $2,500 on the note; that plaintiff told Arries that he would consider the matter; that a few days thereafter

Arries returned to plaintiff with the blanks in the note filled out, making the note payable to plaintiff, and received from plaintiff a check for the sum of $2,500 payable to Leslie G. Arries, which check was paid through the Chicago Clearing House; that subsequently about the middle of September, 1929, Arries gave plaintiff a check of the Midland Direct Advertising Service, by Leslie G. Arries, President, drawn on the National Bank of the Republic; that plaintiff thereupon delivered the note in question to Arries with the signatures thereon intact and as plaintiff had received it from Arries and that the check given to plaintiff by Arries was presented to the National Bank of the Republic and returned by the bank to plaintiff unpaid and marked ''account closed.''

Plaintiff further testified that subsequent to advancing the money on the note as above set forth and before Arries had given the worthless check in payment thereof, plaintiff had a conversation with defendant Bartlett, who was then mayor of the City of Evanston, and that Bartlett had inquired of plaintiff in substance whether or not plaintiff had the note in question in his, plaintiff's, possession; that Bartlett at this time stated to plaintiff that those who had to do with the Midland Direct Advertising Service were about to have a meeting with a view to settling its affairs, including the note in question, and that plaintiff should take the note to the office of the Midland Direct Advertising Service and that Arries would ''settle it.'' Plaintiff did as he was directed by Bartlett, and Arries gave plaintiff the check which was not paid and was returned to plaintiff by the bank marked ''account closed.'' Plaintiff further testified that after the Arries check was returned to him, he again saw defendant Bartlett, and that Bartlett then informed plaintiff that Arries had given other checks on the bank, had overdrawn the company's account, and for this reason the company's account had been closed. Plaintiff then

informed Bartlett that he, plaintiff, intended to and would look to the signers of the note for its payment, and that Bartlett had stated to plaintiff that if plaintiff would take $1,000 in cash and a note for $1,500, the note in question would be taken up. This is not denied by either defendant, and it is not in evidence that either at this time or at any time before the suit was started, did Bartlett or Deemer deny liability on this note.

Before the trial, plaintiff gave defendant notice to produce the note in question which had been delivered to Arries at the time the plaintiff received the bad check in payment thereof. The note was not produced and there was offered in evidence and admitted by the court what purported to be a copy of such note.

Bartlett testified that he first saw the original of the note sued on in July, 1929, and at that time the note was blank, except for the signatures of the makers; that he then signed it and did not see it again until it was brought into his office in pieces with the signatures torn off and marked "Cancelled, Arthur L. Whitely." Bartlett further testified that his object in signing the note was for the purpose of borrowing money on it for the Midland Direct Advertising Service, and that Deemer, one of the defendants and a director in such company, was authorized to take it and get some money. Bartlett also testified that he was interested in the Midland Direct Advertising Service, that Arries was president of such company and Deemer a director, and that he, Bartlett, signed the note with the other defendants. Deemer also testified that he signed the note in question for the purpose of raising money for the Midland Direct Advertising Service. Owen did not testify.

The evidence is that after the note was signed, it was placed in a receptacle to which Arries, the president of the corporation, in common with the other officials of the company, had access. It cannot be presumed

that these people executed this note for the purpose stated, with no intention that the blanks should be filled when occasion demanded it. On the contrary, this court must presume that the makers intended that the blanks would be filled in when necessary to carry out the purpose for which the note was signed.

After the issues were joined, the case called for trial, a jury accepted and considerable testimony heard, defendants moved the court for leave to file additional pleas denying the execution and delivery of the note in question, which motion was denied. The pleas and affidavit of merits filed in the case set forth fully the circumstances concerning the making and delivery of the note. The court did not limit defendants in their offers of proof on this phase of the case, so that there was no error committed in this regard.

In *Adair v. First Nat. Bank of Belvidere*, 253 Ill. App. 206, a number of notes were executed by various persons to be used in procuring a fund to build an electric railroad. The name of the payee was left blank and was filled in by the bank which cashed the notes with the name of the bank, payee. The same question in effect was raised in that case as is raised here, and the court said, page 213:

"The evidence discloses that when said original notes were signed, the name of the payee was left blank for the sole reason that the makers thereof did not know where they would be able to negotiate the same. Under the Negotiable Instruments Act, the bank, having purchased said notes for valuable consideration, had authority to fill in its name as payee. Cahill's St. ch. 98, ¶ 34; *Young v. Ward*, 21 Ill. 223–225; *Weston v. Myers*, 33 Ill. 424–432; *Merritt v. Boyden*, 191 Ill. 136–146; *Kramer v. Schnitzer*, 268 Ill. 603–606; *Leseure v. Weaver*, 99 Ill. App. 375–380."

In *Business Men's League v. Sragow*, 153 N. Y. S. 231, a note was executed with the date, maturity and name of payee blank. It was intrusted by the

maker to a third party, who in turn sold the note. The question arose as to the right of the purchaser to fill in the name in the blanks, and the court said, page 232: "It is well settled that the delivery of a note or draft in blank carries with it the implied authority to the person to whom it is delivered to fill it in and negotiate it, upon which third persons taking the instrument have a right to rely, and the fact that it is filled in in their presence does not put them on inquiry as to the terms of the authority. *Chemung Canan Bank v. Bradner,* 44 N. Y. 680; *Weyerhauser v. Dun,* 100 N. Y. 150, 2 N. E. 274.''

In *Sherman State Bank v. Smith,* 244 Ill. App. 171, the owner of a note and mortgage (upon what was afterwards alleged to have been a false representation) delivered them indorsed in blank, to a real estate dealer with whom the owner had had business relations. The real estate agent sold the note and mortgage to a bank. The mortgagor defaulted and the bank filed a bill to foreclose. The owner filed a cross-bill setting up title. The court held the title to be in the bank, and said, page 174:

"It appears from the record that one of the theories advanced by Mrs. Lane on the trial was that Kowalewski, in obtaining possession of the principal note, coupons and trust deed, under the circumstances disclosed by the record, was guilty of larceny, and, therefore, obtained no title to the notes and trust deed and could not give any to the Sherman State Bank, even though it were a holder for value without notice, and this theory seems to have been adopted by the learned chancellor. The law has long been firmly established that an innocent holder for value of negotiable paper, endorsed in blank before maturity, is protected although the one from whom he received the note may have stolen it from the true owner. The general rule of law is that no one can give a better title to personal property than he has himself. But to favor commerce the

law makes an exception to this rule as to negotiable paper and money. It is founded upon principles of commercial policy; *Mann v. Merchants' Loan & Trust Co.,* 100 Ill. App. 224; *Shipley v. Carroll,* 45 Ill. 285; *Murray v. Lardner,* 2 Wall. (69 U. S.) 110; *Shaw v. Merchants' Nat. Bank of St. Louis,* 101 U. S. 557; *Tucker v. Bank,* 58 N. H. 83; *Saltus & Saltus v. Everett,* 20 Wend. (N. Y.) 267; *Wheeler v. Guild,* 20 Pick (37 Mass.) 545; *Voss v. Chamberlain,* 139 Iowa 569, 117 N. W. 269, 19 L. R. A. (N. S.) 106. See also section 52 of our Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 72. In the instant case, even if Bruno F. Kowalewski were guilty of larceny in obtaining the note and trust deed from Mrs. Lane, yet, if the Sherman State Bank was a bona fide owner for value without notice, it would obtain good title to the note. The only exceptions to this rule of law are where fraud or circumvention has been used in obtaining the execution of a negotiable instrument, Cahill's St. 1925, ch. 98, ¶ 11, or if such negotiable instrument was given in a gaming transaction. Cahill's St. 1925, ch. 98, ¶ 78. Neither of these exceptions are involved in the instant case.''

In *Toledo, Wabash & Western Ry. Co. v. Gilvin,* 81 Ill. 511, page 517, the Supreme Court said:

''When one of two innocent persons must suffer by the knavery of a third, the party who trusted the knave must be the sufferer.''

In the case at bar, however, as between plaintiff and these defendants, in so far as the question of the possession or the right of possession is concerned, Arries cannot be said to have acquired such possession by any other than legal means. As has already been said, he was the president of the company and had access to its papers and documents. The note was not the private property of the makers, but was executed by them for the purpose of procuring a loan for the com-

pany, and the situation is not parallel to a case where possession of a negotiable instrument is obtained by theft or fraud, even if it is to be understood that either is here set up as a defense. As between Arries and his associates, he may have been guilty of bad faith, or worse, but if this be true, his conduct has no bearing upon the question before this court. The fact that this officer of the corporation may have misappropriated the proceeds of the note, if he did, is no concern of plaintiff.

We have examined the instructions of plaintiff and defendants, given and refused, and the criticism by this court of both is that there was a plethora of instructions, given and refused, by each side. The plaintiff offered 32, 20 of which were given and 12 refused. The defendant offered 30, 10 of which were given and 20 refused. The questions of fact and law in the case are neither numerous nor complex, and, therefore, the giving of many instructions containing abstruse propositions of law which merely tended to confuse the jury was improper and a practice to be condemned. However, we find nothing in the giving or refusing of instructions which would justify a reversal of the judgment. The jury saw and heard the witnesses, as did the court, the issues were fully submitted, and fairly presented, and we see no reason for disturbing the verdict and judgment. Therefore, the judgment of the superior court is affirmed.

*Affirmed.*

WILSON, P. J., and HEBEL, J., concur.